[No. D041404. Fourth Dist., Div. One. Mar. 23, 2004.]

MICHAEL L. SWIFT, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS, Defendant and Respondent.

**COUNSEL**

Jack H. Swift for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Andrea Lynn Hoch, Chief Assistant Attorney General, James M. Shciavenza, Assistant Attorney General, Kristin G. Hogue and Michael P. Cayaban, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Plaintiff Michael L. Swift appeals the dismissal of his action after the trial court sustained, without leave to amend, the Department of Corrections' (Department) demurrer to Swift's complaint. Swift brought a five-count complaint against the Department in connection with his imprisonment for an alleged parole violation. The trial court concluded that the Department is immune from Swift's action pursuant to Government Code section 845.8,[1] which provides public entities immunity from injuries resulting from "determining whether to revoke . . . parole . . . ." We affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In our review of the trial court's order sustaining the Department's demurrer, we assume the truth of all facts properly pleaded in Swift's

---

[1] Unless otherwise specified, all subsequent statutory references are to the Government Code.

complaint. (See, e.g., *Fleming v. State of California* (1995) 34 Cal.App.4th 1378, 1381 [41 Cal.Rptr.2d 63].)

In February 1994, Swift was sentenced to state prison for 16 months following his conviction for issuing a forged check. He was released on November 16, 1994, and began parole under the Department's supervision. In March 1995, Swift received permission to serve his parole in Iowa pursuant to an interstate parole compact between Iowa and California. Swift's parole was renewed annually by the Board of Prison Terms (Board) to the maximum of three years on the basis of what Swift claims were false reports submitted by the Department.

In April 1997, prior to Swift's completion of parole, he was arrested in Iowa on a domestic violence charge. This arrest was reported to the Department. The Department filed a report, which Swift alleges contained false information, recommending that a warrant be issued for Swift's arrest and that an order be issued suspending his parole effective May 5, 1997. On May 12, 1997, the Board adopted the Department's recommendations and issued a warrant for Swift's arrest and an order suspending his parole. The warrant was not forwarded to Iowa authorities.

In July 1997, Swift appeared in court in Iowa on the domestic violence charge and was found not guilty. After Swift's acquittal, Iowa authorities reported to the Department that the charges against Swift had been dismissed and that Swift remained on parole. The Department requested that Iowa authorities hold a hearing to determine whether there was probable cause to believe Swift had violated his parole by committing the dismissed domestic violence offense, and by absconding.

The probable cause hearing was held in Iowa in November 1997. An Iowa magistrate found that there was probable cause to believe Swift had violated his parole both by missing appointments and by continuing to use illegal drugs. However, the Iowa magistrate recommended that Swift's parole be continued since he was near the end of his parole period. Swift was released and continued on parole. The Department was advised of the results of the Iowa hearing. Swift continued on parole until January 20, 1998, when, Swift claims, Iowa authorities released him from parole. The Department took no steps to rescind the California order suspending Swift's parole, to reinstate his parole, or to recall the warrant. Swift continued to live outside of California.

In the latter part of 1999, Swift's attorney contacted the Department, advised them that Swift had completed parole, and requested that the warrant be recalled. In March 2001, after Swift's attorney again contacted the

Department, Swift was ordered to present himself in person to the Department's agents. On April 18, 2001, Swift traveled to California and presented himself to the Department's agents. Swift again explained the situation and requested that the warrant be recalled. Swift was released on his own recognizance.

The Department investigated the matter further and again ordered Swift to present himself to the Department. On April 23, 2001, Swift presented himself to the Department's agents, who placed him under arrest. The Department ordered that Swift be imprisoned and issued a parole hold pending a parole revocation hearing. While Swift was in custody pursuant to the parole hold, an agent of the Department produced a report that Swift alleges contained false information, documenting Swift's parole experience. According to Swift, the report deliberately "suppressed" all activities and events that had taken place subsequent to the May 1997 warrant. Swift was confined in custody until June 7, 2001, when his parole revocation hearing was held. At the hearing, the Board's administrative law judge determined that Swift's parole had ended on November 16, 1997. The judge ordered that the warrant be recalled, that Swift's parole be discharged, and that Swift be immediately released.

In July 2002, Swift filed a five-count amended complaint against the Department alleging negligent supervision, negligence per se, negligence, false arrest, and false imprisonment. The Department filed a demurrer in which it claimed that it was immune from liability for Swift's claims pursuant to sections 815.2, 821.6, 845.8 and Civil Code section 43.55. The trial court sustained the demurrer without leave to amend on the ground that the Department was immune from Swift's action pursuant to section 845.8. In addition, the court concluded that the Department was immune from Swift's causes of action for false arrest and false imprisonment pursuant to Civil Code section 43.55 . The court did not reach the Department's claim of immunity under sections 815.2 and 821.6. Subsequently, Swift voluntarily dismissed his action with prejudice and timely appealed.

III.

DISCUSSION

*The Department Is Immune from All of Swift's Claims Pursuant to Section 845.8*

Swift claims the trial court improperly concluded that the Department has immunity from his claims pursuant to section 845.8. The standard of review

governing an appeal after an order sustaining a demurrer without leave to amend is well established:

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Section 845.8 provides in relevant part:

"Neither a public entity nor a public employee is liable for:

"(a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release."

■ Section 845.8 has been interpreted to provide immunity to a parole officer for making discretionary decisions and for taking action as a parole officer which ultimately leads to the revocation of a person's parole. (*Kim v. Walker* (1989) 208 Cal.App.3d 375, 381–382 [256 Cal.Rptr. 223] (*Kim*).) The parole officer in *Kim* was alleged to have " 'conspired and imprisoned plaintiff . . . under [the] frivolous ground of [a] parole violation.' " (*Id.* at p. 382, fn. 7.) In addition, the complaint in *Kim* alleged that " 'during the parole revocation hearing, [the] defendant [parole officer] produced [a] report, falsely accusing plaintiff of child molestation and abuse.' " (*Ibid.*) The court in *Kim* concluded that pursuant to section 845.8 a parole officer is "immune from damages for any injury resulting from the performance of his duties as a parole officer in revoking . . . parole." (*Id.* at p. 382.)

■ While section 845.8 refers to injuries stemming from decisions related to (1) whether to *parole* a prisoner; (2) the *terms and conditions* of parole; and (3) whether to *revoke* parole, the statute has frequently been broadly interpreted to preclude liability for injuries resulting from the allegedly negligent *supervision* of a parolee. (See, e.g., *Fleming v. State of California, supra,* 34 Cal.App.4th at p. 1382 ["our Legislature and the courts

have squarely rejected public liability for harm resulting from the failure to properly supervise a parolee"]; *Brenneman v. State of California* (1989) 208 Cal.App.3d 812, 820 [256 Cal.Rptr. 363] ["Several cases have . . . held . . . that Government Code section 845.8, subdivision (a) bars any state liability for negligent supervision of a released prisoner"].) Accordingly, in light of this well-settled case law construing section 845.8 as extending to even the negligent supervision of parolees, it follows that parole agents are immune for actions related to the determination of "whether to revoke . . . parole." (§ 845.8, subd. (a).)

In this case, each of Swift's five claims is premised on actions that the Department's agents took in causing Swift to be arrested and incarcerated prior to his parole revocation hearing. For example, Swift alleges that agents of the Department (1) negligently allowed false reports to be filed that led to the Board's issuance of the May 1997 warrant for his arrest and the order suspending his parole (negligent supervision); (2) negligently failed to rescind the May 1997 warrant (negligence per se); (3) negligently investigated his parole status (negligence); (4) unlawfully arrested him in April 2001 (false arrest); and (5) unlawfully imprisoned him for 45 days from April 23, 2001, to June 7, 2001, prior to his parole revocation hearing (false imprisonment). All of these actions were taken pursuant to the parole revocation process. Thus, each of the five counts of his complaint relates to actions the Department's agents took in their "performance of . . . duties as [] parole officer[s] in revoking . . . parole." (*Kim, supra,* 208 Cal.App.3d at p. 382.) Accordingly, we conclude that the Department is immune from each of Swift's claims pursuant to section 845.8.

We reject all of Swift's arguments to the contrary. Swift first argues that the Department's agents' actions are remote from the decision to revoke parole, which is made by the Board. We disagree. The Department's agents' actions in imprisoning Swift were directly related to the revocation process as authorized by law. For example, parole agents are authorized to issue parole holds for the purpose of detaining a parolee prior to a parole revocation hearing. (Cal. Code Regs., tit. 15, § 2600.) In addition, Swift was afforded a parole revocation hearing within the time frame recommended by the California Code of Regulations. (Cal. Code Regs., tit. 15, § 2640, subd. (e) ["The parole revocation hearing should be held within 45 days of the date the parole hold is placed"].)

█ Swift is correct that the Department and the Board have separate and distinct roles in the revocation process. For example, the Department is authorized to supervise parolees and to detain them pending a revocation hearing (Pen. Code, §§ 5000–5003; Cal. Code Regs., tit. 15, § 2600) while the Board makes the decision as to whether or not to revoke parole.

(Pen. Code, § 5077.) However, we reject Swift's argument that such roles mandate that the immunity afforded pursuant to section 845.8 be restricted to the Board. The actions taken by the Department during the revocation process are closely related to the decision whether or not to revoke parole. Therefore, the Department is immune for the action of its agents during that process. (See *Kim, supra,* 208 Cal.App.3d at p. 382.)

Swift also argues that section 845.8 did not apply because he was not a "prisoner" at the time of his arrest in April 2001. Swift relies on *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 716 [117 Cal.Rptr. 241, 527 P.2d 865] for the proposition that inmates unlawfully detained are not prisoners for purposes of the application of statutes that provide immunity to public entities and/or employees for their dealings with prisoners. Swift argues that because it was determined at his June 7, 2001 parole revocation hearing that his parole had ended in November 1997, he was not a parolee at the time he was incarcerated in April 2001. *Sullivan* is inapposite because in that case, the plaintiff "allege[d] injury due to defendant's failure to release him from jail *after dismissal of all charges against him.*" (*Id.* at p. 715, italics added.) In this case, Swift was incarcerated *prior* to the determination that his parole had expired in November 1997.

Swift also cites *Fearon v. Department of Corrections* (1984) 162 Cal.App.3d 1254, 1256–1257 [209 Cal.Rptr. 309] to support his argument that he was not a "prisoner" within the meaning of section 845.8. In *Fearon,* the court concluded that the term "prisoner" as defined in section 844[2] did not apply to persons on parole for purposes of interpreting section 844.6, which provides: "a public entity is not liable for: (1) An injury proximately caused by any prisoner. (2) An injury to any prisoner." (*Fearon, supra,* 162 Cal.App.3d at pp. 1256–1257.)

In this case, section 845.8 provides that public entities are immune from liability resulting from "[a]ny injury resulting from determining whether to parole or release a *prisoner* . . . or from determining whether to revoke *his* parole or release." (Italics added.) To the extent Swift is arguing that a *parolee* is not subject to section 845.8, because a person on parole is not a *prisoner,* we reject this contention. We interpret the final clause of section 845.8 to apply to prisoners who have been paroled.

Swift also argues that section 845.8 does not apply to his allegations in the negligence per se cause of action that the Department's agents breached various ministerial duties, such as investigating and documenting all facts

---

[2] Section 844 provides in relevant part: "As used in this chapter, 'prisoner' includes an inmate of a prison, jail, or penal or correctional facility."

relevant to the suspected parole violation, and including all relevant documents in its parole violation report. Swift contends that because section 845.8 is a specific enumeration of the discretionary-act immunity afforded in section 820.2, section 845.8 does not afford immunity for ministerial duties.

█ California courts have routinely rejected the claim that section 845.8 does not afford immunity for the ministerial implementation of correctional programs. (See, e.g, *Martinez v. State of California* (1978) 85 Cal.App.3d 430, 436 [149 Cal.Rptr. 519] ["both discretionary decisions and their ministerial implementation come under the blanket of immunity" afforded in section 845.8], affd. (1980) 444 U.S. 277 [62 L.Ed.2d 481, 100 S.Ct. 553]; *Brenneman v. State of California, supra,* 208 Cal.App.3d at p. 820 ["courts have recognized that '[m]inisterial implementation of correctional programs . . . can hardly, in any consideration of the imposition of tort liability, be isolated from discretionary judgments made in adopting such programs' "]; *Whitcombe v. County of Yolo* (1977) 73 Cal.App.3d 698, 714 [141 Cal.Rptr. 189] ["Our Supreme Court has stated explicitly that in the area of police and correctional activities, a specific legislative mandate of immunity effectively places beyond the pale of liability both discretionary decisions themselves and their ministerial implementations"].) Accordingly, we reject Swift's claim that section 845.8 does not apply to his allegations that the Department's agents breached various ministerial duties.

We also reject Swift's contention that there is a reasonable possibility the defects in his complaint could be cured by amendment. Swift claims the complaint could be amended to allege that various agents of the Department failed to perform their duty to maintain accurate records and their duty to report only true information. Even assuming such duties exist and the Department's agents failed to perform them, the Department is immune from liability because any such failure would have occurred in the agents' "performance of . . . duties as [] parole officer[s] in revoking . . . parole." (*Kim, supra,* 208 Cal.App.3d at p. 382.) Accordingly, the trial court did not abuse its discretion in sustaining the Department's demurrer without leave to amend.

## IV.

## CONCLUSION

The Department is immune from each of Swift's claims pursuant to section 845.8.[3]

---

[3] In light of our conclusion, we need not consider the Department's contentions that Swift failed to plead facts sufficient to establish a breach of a mandatory duty necessary to support his negligence per se claim and that various other statutory immunity provisions also preclude Swift's claims.

## V.

## DISPOSITION

The judgment is affirmed.

McDonald, Acting P. J., and Irion, J., concurred.