[No. S137346. Aug. 16, 2007.]

LENIN FREUD PEREZ-TORRES, Plaintiff and Appellant, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Robert Mann and Donald W. Cook for Plaintiff and Appellant.

Law Offices of John Burton and John Burton for LA Police Watch as Amicus Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Manuel M. Medeiros, State Solicitor General, James M. Humes, Chief Assistant Attorney General, James M. Schiavenza, Assistant Attorney General, Marsha S. Miller and Paul C. Epstein, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**KENNARD, J.**—Mistakenly believing that plaintiff, who was not on parole, had violated his parole, state parole agents arrested and jailed him. After the error was discovered and 25 days after his arrest, plaintiff was released. As relevant here, plaintiff sued the State of California and three of its parole agents for, among other things, negligence and false imprisonment. Defendants invoked Government Code section 845.8, subdivision (a) (section 845.8(a)),[1] which grants public entities and employees immunity from liability for any injury resulting from prisoner release or parole decisions. The trial court granted defense motions for summary judgment. The Court of Appeal affirmed on the ground that defendants were immune under section 845.8(a). We disagree.

## I

Plaintiff Lenin Freud Perez-Torres also uses the names Lenin Freud Perez, Lenin Perez, and Lenin F. Perez.[2] In 1995, plaintiff was arrested by the Montebello police for spousal abuse. (Pen. Code, § 273.5, subd. (a).) At that time, plaintiff was fingerprinted and the State Department of Justice assigned him criminal identification and information (CII) No. A11099636 for use in its criminal history information system (CHIS). Plaintiff was released and no charges were filed.

On March 10, 1997, another man, Lenin Salgado Torres, also known as Lenin Freud Perez, was arrested for spousal abuse. (Pen. Code, § 273.5, subd. (a).) (To distinguish this man from plaintiff, we will refer to him as Salgado.) Salgado was fingerprinted, and his fingerprints were sent to Los Angeles County authorities in charge of determining the existence of a criminal history. No criminal record for Salgado was found, and he was assigned CII No. A11552358. That identification number and Salgado's fingerprints were then sent to the Department of Justice for entry into CHIS; that entry was made in June 1997.

Later in March 1997, Salgado pled guilty and was sentenced to prison. At the time of the plea, Los Angeles County law enforcement authorities checked Salgado's criminal history through CHIS, which provided them *plaintiff's* name and *plaintiff's* CII identification number. The Los Angeles

---

[1] Unless otherwise indicated, all statutory citations are to the Government Code.

[2] This case is before us after the trial court's granting of defendants' motion for summary judgment. Our statement of facts is taken from the record before the trial court when it granted defendant's motion. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66 [99 Cal.Rptr.2d 316, 5 P.3d 874].)

County law enforcement authorities then put *plaintiff's* CII number on Salgado's documentation, including his judgment of conviction.

In October 1998, Salgado was paroled from state prison and deported to Mexico. A condition of parole was that he not return to the United States. When a person is paroled, the California Department of Corrections enters the parolee's name into the "Supervised Release File" (parole file) database. If the parolee is later arrested, a CHIS check will trigger the parole file database; notification of the parolee's arrest is then sent to the parole office supervising the parolee. As explained earlier, plaintiff's CII identification number had been erroneously put on documents relating to Salgado's conviction; thus it was plaintiff's CII number that was entered into the parole database.

Also in October 1998, the Department of Corrections notified the Department of Justice that the CII identification numbers assigned to plaintiff and Salgado should be consolidated because the Department of Corrections thought that the numbers were for only one person, not two. Thereafter, an investigation by the Department of Justice revealed that the two numbers involved not one but two persons, but the Department of Justice failed to inform the Department of Corrections of that discovery.

On April 7, 2000, Montebello police officers arrested *plaintiff* for driving under the influence. In checking plaintiff's criminal history, the police learned of his 1995 arrest and the CII identification number assigned to him then. When plaintiff's fingerprints and his CII number were sent to the Department of Justice, the parole file database indicated that plaintiff was on parole, and a notice of his arrest was then sent to the supervising parole office in Inglewood, where it was received by parole agent David Chaney. Because, as explained earlier, plaintiff's CII number had been mistakenly entered into the parole database, the notification to the Inglewood parole office, which was supervising *parolee Salgado*, erroneously indicated that Salgado, rather than plaintiff, was recently arrested for driving under the influence.

On June 22, 2000, state parole agent Chris Kane, accompanied by agents from the federal Immigration and Naturalization Service, including agent Michael Vaughn, went to plaintiff's home. Plaintiff acknowledged his recent arrest for driving under the influence as well as his earlier 1995 arrest for spousal abuse. Based on Kane's determination that plaintiff resembled a photograph he had of parolee Salgado, plaintiff was arrested. Plaintiff was taken to the Los Angeles County jail, where he was booked and both a parole and an immigration "hold" were placed on him. Upon arrival at the jail, plaintiff repeatedly told Kane that they had the wrong man. Kane then realized there was a disparity between plaintiff's height (five feet and three or four

inches) and Salgado's height (five feet and eight or nine inches) as stated in his criminal records. Kane took photographs of plaintiff. Back at the parole office, Kane showed the photographs to parole agent Chaney and supervisor Elizabeth Soos. When Chaney telephoned federal Immigration and Naturalization Service agent Vaughn to express doubts about plaintiff's identity, Vaughn said that he had a picture of parolee Salgado and that the jailed person was indeed Salgado. The state parole agents then apparently decided that fingerprint verification was unnecessary.

On July 12, 2000, state parole agent Chaney, at the request of an attorney retained by plaintiff's wife, asked that a state Department of Justice technician visually compare plaintiff's fingerprints with those of parolee Salgado. The comparison confirmed that plaintiff was not Salgado; that same day, the state parole hold on plaintiff was removed. But the federal Immigration and Naturalization Service's immigration hold was not lifted until July 17, 2000, when plaintiff was released from jail.

Thereafter, but before the lawsuit in this case was filed, plaintiff participated in a federal class action against Los Angeles County, the Los Angeles County Board of Supervisors, and the Los Angeles County Sheriff's Department alleging, among other things, liability for arresting the wrong person and holding the person without a timely determination of the person's true identity. The federal class action was resolved by a December 6, 2002, order of settlement, release, and dismissal, under which plaintiff received $8,500.

On January 28, 2002, plaintiff filed this action in the Los Angeles Superior Court against the United States and federal immigration agent Vaughn, as well as the State of California and its parole agents Kane and Chaney. The complaint alleged causes of action for interference with the exercise of legal rights (Civ. Code, § 52.1), false imprisonment, and negligence (*id.*, § 1714). The United States government filed in the federal district court a notice of removal of the action, thereby divesting the state court of authority to proceed unless the case was remanded. (28 U.S.C. § 1446(a), (d).) The federal district court granted motions to dismiss the State of California and to dismiss its parole agents Chaney and Kane in their official capacities, and it remanded to the state court plaintiff's claims against these defendants. After that remand, plaintiff added state parole supervisor Soos as a defendant. In the trial court, the State of California and Soos demurred to the complaint on the ground of statutory immunity. The trial court overruled the demurrers.

Defendants State of California and parole supervisor Soos then moved for summary judgment on the ground that plaintiff's lawsuit was barred by the doctrine of res judicata in light of the settlement of the federal class action in which plaintiff had participated before filing this action against the state

defendants. Plaintiff moved for summary adjudication of defendants' affirmative defense that they had acted reasonably.

The trial court granted the state defendants' motion for summary judgment, ordered plaintiff's motion for summary adjudication off calendar, and entered judgment for defendants. On plaintiff's appeal, the Court of Appeal held that res judicata did not apply in this case, but it nevertheless affirmed the judgment in favor of the state defendants based on its conclusion that defendants have immunity under section 845.8(a). It agreed with defendants that "it makes no difference that the revocation decision concerned Salgado's parole rather than plaintiff's parole status (plaintiff apparently has never been on parole). *Plaintiff is in the same situation as other innocent third parties who are harmed by a decision regarding someone else's parole.*" (Original italics.) The Court of Appeal concluded that although "the manner in which the plaintiff in the instant case was affected by defendants' decisions regarding Salgado's parole status is out of the ordinary (arrest and incarceration rather than physical harm), this variance does not take his case out of the [immunity] provisions of section 845.8." We granted plaintiff's petition for review.

## II

Plaintiff challenges the Court of Appeal's holding that section 845.8(a) grants the state defendants immunity from liability on three grounds: (1) the error in assigning to him the wrong identification number was not part of the state's determination whether to revoke parole; (2) the immunity applies only if the person whose parole is revoked is the person actually on parole; and (3) under this court's decision in *Johnson v. State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352] (*Johnson*), the immunity does not extend to his continued incarceration after the state defendants knew or should have known he was the wrong man. We disagree with plaintiff's first and second arguments; we agree, however, with plaintiff's third argument, which we will address last.

The immunity provision at issue states: "Neither a public entity nor a public employee is liable for: [¶] (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release." (§ 845.8(a).)

We reject plaintiff's first argument, that the state's administrative error in assigning him a CII identification number belonging to parolee Salgado was not part of "determining whether to revoke . . . parole" under the statute. As the state's administrative error was the basis for the parole revocation

determination and thus was an integral part of that decision, it was part of determining whether to revoke parole.

■ We also reject plaintiff's second argument, that the statutory immunity for state defendants does not apply because state officials arrested and jailed him based on the mistaken belief that he was a parole violator. As plaintiff points out, it was Salgado, not plaintiff, who was on parole. True, plaintiff was the wrong man, so to speak, and he was an innocent third party. But, as the Court of Appeal observed, these facts do not render the immunity provision inapplicable, because the statutory phrase "any injury" includes injuries to innocent third parties. (See, e.g., *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 746–749 [167 Cal.Rptr. 70, 614 P.2d 728] [immunity for death of five year old killed by release of juvenile offender]; *Fleming v. State of California* (1995) 34 Cal.App.4th 1378, 1382–1383 [41 Cal.Rptr.2d 63] [immunity for murder committed by parolee]; *Brenneman v. State of California* (1989) 208 Cal.App.3d 812 [256 Cal.Rptr. 363] [same].) Because the state immunity applies to injuries suffered by innocent third parties and plaintiff was an innocent third party, that plaintiff was not personally the parolee does not by itself render the statutory immunity inapplicable here.

We do, however, agree with plaintiff's third argument, that the statutory immunity does not extend to plaintiff's continued incarceration after defendants knew or should have known he was the wrong man. Pertinent here is this court's decision in *Johnson, supra,* 69 Cal.2d 782. That case involved the applicability of both section 820.2 and section 845.8, which is the statute here in issue, pertaining to a claim of immunity by the state for injuries arising out of the Youth Authority's decision to place in a foster home a dangerous youth who was on parole. (*Johnson, supra,* at pp. 784–785.) The youth had displayed homicidal tendencies as well as violence and cruelty to both animals and people, aspects that were not revealed to the foster parents. (*Ibid.*) The youth assaulted one of the foster parents. (*Id.* at p. 785.) This court held that the state's decision whether to warn the foster parents of the youth's dangerous propensities was not within either section 820.2's immunity for discretionary decisions of public employees or section 845.8(a)'s immunity for an injury resulting from a determination to parole or release a prisoner (*Johnson, supra,* at p. 786). Below we discuss the basis for that holding.

As just noted, section 820.2 grants immunity to public employees for injuries resulting from discretionary decisions. *Johnson, supra,* 69 Cal.2d 782, distinguished between basic policymaking or "planning" on the one hand and ministerial or "operational" levels of decisionmaking on the other hand, holding that the first category triggered immunity while the latter category did not. (*Id.* at pp. 793–796.) *Johnson* concluded that although the

basic policy decision (such as standards for parole) warrants immunity, "subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication on the question of negligence." (*Id.* at p. 797.)

■ *Johnson, supra,* 69 Cal.2d 782, then addressed section 845.8(a), which is at issue here and which immunizes the state from a determination "whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release." (§ 845.8(a).) To resolve the issue, *Johnson* applied the distinction it had drawn earlier between basic or discretionary decisions on the one hand and ministerial decisions implementing the basic decision on the other hand. "Once the proper authorities have made the basic policy decision—to place a youth with foster parents, for example—the role of section 845.8 immunity ends" (*Johnson, supra,* at p. 799), that is, actions implementing that basic policy decision are outside the scope of the immunity. *Johnson* went on to hold that the state's "subsequent negligent actions, such as the failure to give reasonable warnings to the foster parents actually selected, are subject to legal redress." (*Ibid.*; see 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 357, p. 570.)

In *Barner v. Leeds* (2000) 24 Cal.4th 676 [102 Cal.Rptr.2d 97, 13 P.3d 704], this court rejected a request by 59 California cities and towns that we reconsider and overrule our 1968 decision in *Johnson, supra,* 69 Cal.2d 782. We observed in *Barner* that the principles set forth in *Johnson* reflected more than three decades of authoritative precedent, and that the Legislature during that time had made no changes to the governmental immunity provision of section 820.2 addressed in *Johnson.* (*Barner v. Leeds, supra,* 24 Cal.4th at p. 685, fn. 2.) Nor, we now note, has the Legislature made any changes to the immunity under section 845.8(a), the other statute addressed in *Johnson.* We further note that by now the principles we enunciated in *Johnson* are approaching four decades of established precedent.

The state here contends that *Johnson, supra,* 69 Cal.2d 782, is distinguishable from this case because in *Johnson,* section 845.8(a) did not apply to the plaintiff's claim, while section 845.8(a) does apply here to plaintiff's claim. Not so. *Johnson* concluded that the plaintiff's claim there *was* within section 845.8(a) to the extent it was based on the Youth Authority's decision to place the dangerous youth with the foster parents, but not insofar as it was based on that entity's later negligent acts. *Johnson,* as we have pointed out earlier, stated: "Once the proper authorities have made the basic policy decision—to place a youth with foster parents, for example—the role of section 845.8 immunity ends; subsequent negligent actions, such as the failure to give reasonable warnings to the foster parents actually selected, are subject to

legal redress." (69 Cal.2d at p. 799.) Thus, contrary to the state's assertion here, *Johnson* cannot be distinguished from this case on the ground that *Johnson* did not apply section 845.8(a).

Likewise misplaced is the state's suggestion that *Johnson*'s distinction between discretionary and ministerial decisions does not apply to section 845.8(a). Citing this court's decision in *Kisbey v. State of California* (1984) 36 Cal.3d 415 [204 Cal.Rptr. 428, 682 P.2d 1093] and the Court of Appeal's decision in *Swift v. Department of Corrections* (2004) 116 Cal.App.4th 1365 [11 Cal.Rptr.3d 406] (*Swift*), the state defendants assert that the section 845.8(a) governmental immunity is absolute, rendering inapplicable any distinction between discretionary and ministerial decisions. But *Kisbey* concerned the application of section 845.8, *subdivision (b)*,[3] not subdivision (a), which is at issue here. *Kisbey* did state that section 845.8 "has been interpreted as providing for an 'absolute' immunity—one which applies to ministerial as well as discretionary acts. (*County of Sacramento v. Superior Court* (1972) 8 Cal.3d 479, 481–484 [105 Cal.Rptr. 374, 503 P.2d 1382].)" (*Kisbey*, *supra*, 36 Cal.3d at p. 419.) But *Kisbey* made that observation in the context of subdivision (b) rather than subdivision (a) of section 845.8. And the supporting authority that *Kisbey* cited, *County of Sacramento v. Superior Court*, had distinguished this court's decision in *Johnson*, *supra*, 69 Cal.2d 782, with regard to the scope of subdivision (b) of section 845.8, by noting that in contrast to subdivision (a) of that statute, subdivision (b) was not limited in its scope. (*County of Sacramento v. Superior Court*, *supra*, 8 Cal.3d at p. 484.)

With respect to the Court of Appeal's decision in *Swift*, *supra*, 116 Cal.App.4th 1365, defendants here rely on this statement on page 1373 from that decision: "California courts have routinely rejected the claim that section 845.8 does not afford immunity for the ministerial implementation of correctional programs." That language, defendants contend, supports their argument that the distinction this court drew in *Johnson*, *supra*, 69 Cal.2d 782, between discretionary and ministerial decisions by the state does not apply to the governmental immunity under section 845.8(a). True, that language from *Swift* does lend support to the state's argument here. But the observation in *Swift* was overbroad and thus wrong, as discussed below.

As noted on page 143, *ante,* this court in *Johnson*, *supra*, 69 Cal.2d 782, applied the distinction between basic or discretionary decisions and ministerial decisions when it addressed the governmental immunity provision of section 845.8(a). Also, the Court of Appeal in *Swift*, *supra*, 116 Cal.App.4th at

---

[3] Section 845.8, subdivision (b), grants immunity for: "(b) Any injury caused by: [¶] (1) An escaping or escaped prisoner; [¶] (2) An escaping or escaped arrested person; or [¶] (3) A person resisting arrest."

page 1374, cited Court of Appeal decisions in *Martinez v. State of California* (1978) 85 Cal.App.3d 430 [149 Cal.Rptr. 519] (rape and murder by parolee), *Brenneman v. State of California, supra,* 208 Cal.App.3d 812 (molestation and murder by parolee), and *Whitcombe v. County of Yolo* (1977) 73 Cal.App.3d 698 [141 Cal.Rptr. 189] (assault by probationer released from custody on bail), as supporting its statement that section 845.8(a)'s governmental immunity applies irrespective of whether the governmental act complained of is ministerial or discretionary. Each of the three cited cases relied on by the Court of Appeal in *Swift* involved claims of liability based on the state's alleged negligent failure to supervise a parolee or a probationer released from custody on bail. But *Swift* did not involve negligent supervision of either a parolee or a probationer; nor does this case. *Swift*'s statement quoted above was overbroad because it had nothing to do with the case before it. What was at issue in *Swift* was a claim that the revocation of the plaintiff's parole was improper because his term of parole had expired. (116 Cal.App.4th at p. 1371.)[4]

█ Here, the state's decision to revoke Salgado's parole, based on the mistaken belief that plaintiff, a nonparolee, was Salgado, was—like the decision in *Johnson* to place the dangerous youth on parole with the foster parents—a basic policy decision and thus within the governmental immunity provision of section 845.8(a). After that basic policy decision was made, however, the state defendants' conduct in keeping plaintiff in jail after they knew or should have known that he was the wrong man was—like the failure in *Johnson* to warn the foster parents of the youth's dangerous propensities—an action implementing the basic policy decision and thus outside the statutory immunity, making it subject to legal redress on the question of negligence by the state. (*Johnson, supra,* 69 Cal.2d at pp. 797, 799.) Just as section 845.8(a)'s governmental immunity was inapplicable in *Johnson* to the state's failure to warn the foster parents, so too here it is inapplicable to the state defendants' decision to keep plaintiff in jail after they knew or should have known he was not parolee Salgado.[5]

---

[4] To the extent *Swift v. Department of Corrections, supra,* 116 Cal.App.4th 1365, is inconsistent with the views expressed here, it is disapproved.

[5] This conclusion makes it unnecessary to address plaintiff's contentions that applying the governmental immunity of section 845.8(a) here would violate his federal and state constitutional right to equal protection of the laws and his federal and state constitutional right to be free from unreasonable seizures.

Plaintiff also asks that we decide his motion for summary adjudication and conclude that his arrest was unreasonable. We decline to do so. The trial court has not ruled on plaintiff's motion, which was taken off calendar when the trial court granted the state defendants' motion for summary judgment.

The judgment of the Court of Appeal is reversed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.