Filed 7/17/13  Steinke v. Bank of America CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RICHARD P. STEINKE et al., | |
| Plaintiffs and Appellants, | E055944 |
| v. | (Super.Ct.No. INC1104174) |
| BANK OF AMERICA, N.A., | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Randall Donald White, Judge.  Affirmed.

The Law Office of Gary Kreep and Gary G. Kreep for Plaintiffs and Appellants.

Bryan Cave, Stuart W. Price, Sean D. Muntz, and Ofunne N. Edoziem for Defendant and Respondent.

1

## I.  INTRODUCTION

On November 14, 2011, plaintiffs and appellants, Richard P. and Carolyn K. Steinke, filed a first amended complaint to set aside a foreclosure sale.  A second cause of action, for alleged bad faith negotiation and fraud, was also alleged.

On January 31, 2012, the trial court sustained defendant and respondent, Bank of America, N.A.'s (the Bank), demurrer to the first amended complaint without leave to amend.

Plaintiffs appeal.

## II.  STANDARD OF REVIEW

A demurrer tests the sufficiency of the factual allegations of the complaint to state a cause of action.  (Code Civ. Proc., § 430.10, subd. (e).)

In reviewing a general demurrer, the facts pled are assumed to be true and the only issue is whether they are legally sufficient to state a cause of action.  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by

2

amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Our standard of review is de novo: "Treating as true all material facts properly pleaded, we determine de novo whether the factual allegations of the complaint are adequate to state a cause of action under any legal theory, regardless of the title under which the factual basis for relief is stated. [Citation.]" (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486.)

A. *The First Amended Complaint*

The first amended complaint alleges that plaintiffs owned a home in Coachella. In June 2005, plaintiffs executed a promissory note for $227,800, secured by a deed of trust on the property. Plaintiffs allege, on information and belief, that the note was subsequently transferred to Countrywide Financial Corporation (Countrywide) and then to the Bank. However, they also allege that the Bank does not hold the original note.

On July 19, 2010, plaintiffs began negotiations with the Bank to modify the note. The negotiations failed on October 18, 2010, and plaintiffs listed the property for sale.

The broker, John Feehan, found a short sale buyer who offered $105,000 for the property. The offer was rejected and the Bank postponed the foreclosure sale in order to obtain an appraisal of the property. In the meantime, Feehan found a very comparable

property that recently sold for $128,000.  The prospective buyer then raised his or her offer to $128,000.

The Bank allegedly used two different negotiators to communicate with Feehan. The Bank subsequently set a price of $140,000 for the property and Feehan's prospective buyer increased the offer price accordingly.

On April 14, 2011, a Bank supervisor told Feehan that it needed the HUD-1 paperwork on that day to postpone a foreclosure sale set for Monday, April 18.  Feehan immediately forwarded the requested information to the Bank.

Nevertheless, the Bank proceeded with the foreclosure sale without any further notice to plaintiffs.  The opening bid was set at $103,400.  Plaintiffs allege, on information and belief, that the Bank "did not clearly represent" the property as an improved lot.  The Bank purchased the property at the foreclosure sale for $103,400.

The first cause of action, which incorporates the general allegations, is a cause of action to set aside the nonjudicial sale.  Plaintiffs request that the Bank produce an "original copy" of the promissory note.  They argue that only the note holder is authorized to begin foreclosure proceedings.

Plaintiffs cite a number of Commercial Code sections to support their argument. They contend that only the person holding the note has standing to enforce it.

However, the law is clear that "California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924k, which 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale

4

contained in a deed of trust.' [Citation.] 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*).)

*Gomes* continues with a quote from *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 834: "It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings." (*Gomes, supra,* 192 Cal.App.4th at p. 1154.)

*Gomes* also states: "By asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive nonjudicial scheme. As Defendants correctly point out, Gomes has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial

5

foreclosure process suggests that such a judicial proceeding is permitted or contemplated." (*Gomes, supra,* 192 Cal.App.4th at p. 1154.)

The same is true here. Plaintiffs are challenging ownership of the Note and are trying to impose a requirement that the trustee must show standing to conduct the foreclosure sale, i.e., they seek to impose a further requirement on the foreclosing trustee which is not supported by the comprehensive statutory scheme.

As *Gomes* states: "However, nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action. [Citation.]" (*Gomes, supra,* 192 Cal.App.4th at p. 1155.) Accordingly, we follow *Gomes* and reject this argument.

Plaintiffs also allege that the Bank did not give them notice of the foreclosure sale. However, they allege that the sale was scheduled to take place on April 18, 2011, and they were damaged when it did so.

In this regard, Civil Code section 2924g, subdivision (d) provides, in pertinent part: "The notice of each postponement and the reason therefor shall be given by public declaration by the trustee at the time and place last appointed for sale. . . . No other notice of postponement need be given." Thus, plaintiffs were required to assume the sale would proceed at the previously set day and time and the Bank was not required to give a special notice of postponement (or nonpostponement) to them.

Plaintiffs also allege that the Bank did not clearly represent the property as an improved lot at the foreclosure sale. They contend this is an irregularity in the sale.

6

They cite several cases, discussed below, that allow a foreclosure sale to be set aside when the sale has been "improperly, unfairly or unlawfully conducted, or is tainted by fraud . . . ."

A second cause of action is for bad faith negotiation and fraud. Plaintiffs allege they complied with all of the Bank's requirements for a short sale, including finding a qualified buyer, but the Bank proceeded with the foreclosure sale without providing notice to plaintiffs. As a result, the prospective buyer was prevented from attending the sale and offering a bid higher than the sale price. Plaintiffs allege they were damaged because the Bank purchased the property at the price of $103,400, and could have sold it at a higher price if the prospective buyer had been able to attend the sale.

B. *The Trial Court's Decision*

The trial court sustained the demurrer without leave to amend. On the first cause of action, the court found that plaintiffs had failed to plead tender of the amount due, that there is no requirement that the original note be produced, that Civil Code section 2924 et seq. are the governing procedural sections, and that plaintiffs had notice of the foreclosure sale.

On the second cause of action, the trial court ruled that plaintiffs failed to prove fraud with specificity, the alleged misrepresentation made at the foreclosure sale was not made for their benefit, and that the alleged failure to approve the short sale is an insufficient ground of fraud.

C.  *Fraud Allegations*

Plaintiffs first argue that they pled the elements of fraud with specificity.

"The elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage.  [Citation.]  The tort of negligent misrepresentation, a species of the tort of deceit [citation], does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.)

Plaintiffs argue they sufficiently alleged each of these elements.  With regard to the reliance element, plaintiffs only state that "in reliance on [the Bank's] false misrepresentation, no bids were submitted on subject property."  (Capitalization omitted.)

The Bank argues there were no facts alleged which show justifiable reliance.  The only facts alleged were that, at the sale, the Bank misrepresented that the property was an unimproved lot.  This misrepresentation was not made to plaintiffs, but only to persons attending the foreclosure sale.

We agree with the trial court and the Bank that the allegation was insufficient to support a fraud claim:  "A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon.  [Citations.]  It must appear, however, not only that the plaintiff acted in reliance on the misrepresentation but that he was justified in his reliance.  [Citations.]"

8

(*Seeger v. Odell* (1941) 18 Cal.2d 409, 414.)  In the present case, any such misrepresentation was made to the persons attending the foreclosure sale, and plaintiffs have not stated facts sufficient to show they justifiably relied on any such misrepresentation.

Under the stated facts, any such reliance would have been attributable to the potential buyer's failure to bid because of a belief that the property was unimproved. However, a potential buyer might just as well be encouraged to bid if it independently knew that the subject property was improved.  There was simply no showing of justifiable reliance based on plaintiffs' theory of the case.

"Moreover, reliance, one of the elements necessary to state a cause of action in fraud or deceit is not adequately pled.  Plaintiffs must show 'actual' reliance, i.e., that the representation was an '"immediate cause"' that altered their legal relations.  [Citation.] Besides actual reliance, plaintiff must also show 'justifiable' reliance, i.e., circumstances were such to make it *reasonable* for plaintiff to accept defendant's statements without an independent inquiry or investigation.  [Citation.]"  (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331-1332.)  Plaintiffs have failed to adequately plead actual and justifiable reliance here.

Nor was there any showing of damages.  Plaintiffs only argue that they were damaged by having a foreclosure sale on their credit record.  Assuming that this is true, it is a consequence of their default on their mortgage loan.  Obviously, a lender is entitled to rely on its security for a mortgage loan when the borrower defaults.

9

We agree with the Bank that the sale was intended to allow the Bank to recoup some of its losses caused by plaintiffs' failure to pay the amounts due on the mortgage. A bank's pursuit of the security for a mortgage loan following the borrower's default is not intended to benefit plaintiffs. An artificially low sales price does not damage plaintiffs. If anything, it damages the mortgagor because the bank recovers less on its security for the mortgage loan.

Plaintiffs have simply failed to show any actionable defect in the foreclosure sale. """"As a general rule, there is a common law *rebuttable* presumption that a foreclosure sale has been conducted regularly and fairly." [Citations.] Accordingly, "[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale *that caused prejudice to the person attacking the sale*." [Citation.] . . . [T]he presumption must prevail when the record lacks substantial evidence of a *prejudicial* procedural irregularity. [Citation.]' [Citations.]" (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 96.)

We also agree with the Bank that plaintiffs have failed to allege actionable fraud during the short sale negotiations. The Bank was not required to sell to the potential buyer identified by plaintiffs, nor was it required to renotice the foreclosure sale. As noted above, the sale had been noticed for April 18, 2011, and plaintiffs were not entitled to assume it had been postponed without the Bank's specific agreement to postpone the sale. (Civ. Code, § 2924g.)

10

D. *Applicability of the Tender Rule*

"An allegation of tender of the indebtedness is necessary when the person seeking to set aside the foreclosure sale asserts the sale is voidable due to irregularities in the sale notice or procedure. [Citations.] '"The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]."' [Citation.]" (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 801-802.)

In the present case, there is no allegation of tender in the first amended complaint. Instead, plaintiffs argue that tender was not required because the Bank lacked standing to conduct the foreclosure sale. Specifically, plaintiffs contend the purported trustee, ReconTrust, was not the trustee of record and therefore had no authority to conduct the foreclosure sale or to deliver a valid deed. Plaintiffs cite the Notice of Default and Election to Sell under Deed of Trust dated October 15, 2010 and recorded on October 19, 2010. They also rely on the Substitution of Trustee and Assignment of Deed of Trust dated October 20, 2010 and recorded October 27, 2010. Because the assignment was executed after the notice of default, they argue that ReconTrust acted before it was authorized to do so.

At most, plaintiffs allege a procedural defect in the foreclosure process. Tender was therefore required under *West.*

Neither party cites the leading case on this issue, *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89. *Lona* states the general tender rule stated above and then describes

11

four exceptions to the tender rule. Generally, these are: (1) tender is not required if the action attacks the validity of the underlying debt; (2) tender is not required if there is a counterclaim or setoff against the beneficiary; (3) tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale; and (4) no tender will be required when the trustor is not required to rely on equity to attack the sale because the trustee's deed is void on its face.

While the parties have not given us their views on the applicability of these exceptions, it appears that only the third exception is applicable here. Considering that exception, we find that it would be inequitable to require tender of the entire debt due when foreclosure results from nonpayment of the mortgage and it appears that the homeowner is unable to tender the entire amount due. In this case, the notice of default states that the Bank would return the account to good standing upon payment of all past due payments plus permitted costs and expenses. Since this was the only amount demanded by the Bank to reinstate the loan, this is the amount that the borrower was equitably required to tender.

"The [defendants] argue [plaintiff] was not entitled to relief on her 15th cause of action for rescission because she failed to tender the amount necessary to cure the default. The [defendants] explain: 'Whenever there is a challenge to the validity of the trustee's sale, there is an attempt to have the sale set aside to have the title restored. The action is in equity, and when the trustor seeks to set the sale aside, he [or she] is required to do equity before the court will exercise its equitable powers. Therefore, as a condition

12

precedent to an action by the trustor to set aside the trustee's sale on the grounds that the sale is voidable, the trustor must pay, or offer to pay, the secured debt, *or at least all of the delinquencies and costs due for redemption*, before he [or she] commences his [or her] action, or in his [or her] complaint.  Without an allegation of such a tender in the complaint that attacks the validity of the sale, the complaint does not state a cause of action.'  [Citation.]"  (*Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 423-424.)  In other words:  "'[A] tender may not be required where it would be inequitable to do so.'  [Citation.]"  (*Id.* at p. 424.)

In *Lona*, the court, in discussing the third exception to the tender rule, relied on *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285.  In that case, the court held that it would be inequitable to require defendant to pay, or offer to pay, a debt of $57,000 to attack the sale of her $5,000 homestead.  (*Id.* at p. 291.)

The conclusion to be drawn from these cases is that tender is an equitable principle, and the trial court should consider in each case whether tender is required as a matter of equity.  In the present case, the trial court did decide that full tender of the amount due was required.  While we find the trial court's exercise of discretion questionable in view of the Bank's demand in the notice of default, plaintiffs have not addressed the issue in their brief and, accordingly, have not met their burden of demonstrating error.

E. *Denial of Leave to Amend the Complaint*

"Leave to amend is properly denied when the facts are not in dispute and the nature of the claim is clear, but there is no liability under substantive law. [Citation.] '[All] intendments weigh in favor of the regularity of the trial court proceedings and the correctness of the judgment. Unless clear error of abuse of discretion is demonstrated, the trial court's judgment of dismissal following the sustaining of defendants' demurrer will be affirmed on appeal [citation].' [Citation.]" (*Wilhelm v. Pray, Price, Williams & Russell, supra*, 186 Cal.App.3d at p. 1330.)

"To show abuse of discretion, plaintiff must show in what manner the complaint could be amended and how the amendment would change the legal effect of the complaint, i.e., state a cause of action. [Citations.] This showing may be made either in the trial court or on appeal. [Citation.]" (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 992.)

Plaintiffs acknowledge this burden and their duty to demonstrate how the amendment will change the legal effect of the complaint, citing *Swift v. Department of Corrections* (2004) 116 Cal.App.4th 1365, 1373, overruled on other grounds in *Perez-Torres v. State of California* (2007) 42 Cal.4th 136, 145, footnote 4.

To meet this burden, plaintiffs allege that, since the demurrer was sustained, they have received a report from a company that specializes in expert forensic mortgage analysis. They state: "The report explains that the parties signing for Mortgage Electronic Registration Service (hereinafter referred to as 'MERS') were actually

14

ReconTrust employees. ReconTrust is a wholly owned subsidiary of [the Bank]." Plaintiffs contend that this relationship created a material conflict of interest. Plaintiffs also state that the report explains that these employees engaged in a practice known as "robo-signing," and that the signatures were forged. Finally, plaintiffs continue to argue that there is no evidence of how Countrywide or Ryland Mortgage Company (Ryland) came into ownership of the plaintiffs' promissory note. They allege that the note was securitized and no transfers are reflected in the county recording system.

We find these new allegations to be insufficient to raise new causes of action.

First, Ryland came into possession of plaintiffs' promissory note when, as alleged in the complaint, plaintiffs executed and delivered to Ryland, as the lender, a promissory note.

Secondly, plaintiffs allege that Ryland transferred the note to Countrywide and Countrywide then transferred the note to the Bank, presumably after the Bank acquired Countrywide. Subsequently, the note was securitized, presumably by use of the MERS system.

In *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, the court explained the role of the MERS system in the securitization of real property debt instruments. (*Id.* at p. 267.) One aspect of that role is that "[m]embers of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members

15

without requiring recordation in the public records. [Citation.]" (*Ibid.*) The courts which have considered the system in detail "have generally, although by no means universally, found that the use of MERS does not invalidate a foreclosure sale that is otherwise substantively and procedurally proper." (*Ibid.*)

*Fontenot* cites *Gomes* as a recent case on this issue. (*Fontenot v. Wells Fargo Bank, N.A., supra*, 198 Cal.App.4th at p. 268.) In *Gomes*, MERS was a defendant. (*Gomes, supra*, 192 Cal.App.4th at p. 1150.) "Gomes defaulted on his loan payments, and he was mailed a notice of default and election to sell—recorded on March 10, 2009—which initiated a nonjudicial foreclosure process. The notice of default was sent to Gomes by ReconTrust, which identified itself as an agent for MERS. Accompanying the notice of default was a declaration signed by an employee of Countrywide, which apparently was acting as the loan servicer." (*Id.* at pp. 1151-1152, fn. omitted.)

The notice of default in the present case is also signed by a ReconTrust employee as agent for MERS, the beneficiary. According to the notice of default, loan servicing is provided by Bank of America Home Loans Servicing. As discussed above, courts, including *Gomes*, have rejected similar challenges to MERS's authority to foreclose. (*Gomes, supra*, 192 Cal.App.4th at pp. 1157-1158.)

We therefore conclude that plaintiffs have not shown that their new information would establish any new cause of action for wrongful foreclosure. The mere fact that the MERS system was used is legally irrelevant because, even if we accept the alleged forgery and related alleged irregularities, plaintiffs have not shown how they have been

16

prejudiced or damaged by use of the MERS system. As the Bank notes, plaintiffs do not claim the foreclosure documents were false, and they do not deny they were in default. Thus, the alleged irregularities could not have prejudiced them.

"Prejudice is not presumed from 'mere irregularities' in the process. [Citation.] Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." (*Fontenot v. Wells Fargo Bank, N.A., supra*, 198 Cal.App.4th at p. 272; see also *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507-1508 [Fourth Dist., Div. Two].)

On this record, we find that plaintiffs have not met their burden of showing that their complaint could be amended to allege the existence of a viable cause of action. We therefore find that the trial court did not abuse its discretion in sustaining the Bank's demurrer without leave to amend.

## III. DISPOSITION

The judgment is affirmed.  The Bank shall recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

HOLLENHORST
Acting P. J.

RICHLI
J.