Filed 3/20/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| BRANDON LAWRENCE,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br><br>      Respondent;<br><br>CALIFORNIA HIGHWAY PATROL et al.,<br><br>      Real Parties in Interest. | A152513<br><br>(San Mateo County<br>Super. Ct. No. 17-CIV-03641) |

Petitioner Brandon Lawrence, dba Sportscars Italiano, sought a writ of mandate in the superior court to compel the California Highway Patrol (CHP) to restore possession of a classic sports car that the CHP seized from him after it received a report that the car had been stolen from a prior owner before petitioner acquired it. The court denied his petition without prejudice and set the matter for trial to determine the rightful owner of the car in an interpleader action filed by the CHP. Petitioner now seeks a writ of mandate compelling the superior court to set aside that order and have the car returned to him immediately. We will grant the writ.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner is "a longtime broker and dealer of classic cars." In March 2015, he arranged to purchase, on behalf of an investor named Philip White, a rare 1947 Cisitalia automobile from a Japanese construction company called Ohtomi Kensetsu Kabushiki

Kaisha (Ohtomi). Following shipment of the car from Japan, petitioner oversaw efforts to restore it to its original configuration and appearance.

In late 2016 or early 2017, a stolen vehicle report was filed with the CHP on behalf of the person who owned the Cisitalia prior to Ohtomi, a Japanese citizen named Kiyoshi Takihana. The report, submitted by a private detective on the latter's behalf, claimed that Ohtomi had stolen the car from Takihana two years earlier. Based on that accusation, in March 2017 the CHP seized the car from a repair shop where petitioner was having work performed. The car was impounded and has since been held by the CHP at an undisclosed location.

Petitioner and his counsel communicated with officials at the CHP, providing evidence indicating that Takihana's complaint was not that the car had been stolen, but rather that Ohtomi had failed to pay the full amount due under their purchase agreement. They also advised the CHP that the car was fragile, requiring extraordinary care and handling. After investigating the matter for four months, the CHP determined that the dispute was essentially civil in nature but refused to return the car to petitioner absent a valid court order.

On August 10, 2017, petitioner filed an action in San Mateo County Superior Court, seeking a writ of mandate, declaratory relief, and injunctive relief compelling the car's immediate return. He argued that under *Ensoniq v. Superior Court* (1998) 65 Cal.App.4th 1537, 1549 (*Ensoniq*), the CHP was required to prove by a preponderance of the evidence that the car was stolen or embezzled in order to justify the car's continued detention. He further argued that because the CHP had indicated Takihana's claim raised a civil matter only, the agency had effectively acknowledged it could not carry that burden.

On August 11, 2017, petitioner filed an ex parte application for an order to show cause why a writ of mandate should not issue requiring the CHP to return the car. That same day, the trial court issued an order to show cause (OSC), ordering the CHP to either

2

return the car to petitioner or to file papers demonstrating why the car should not be returned. The court directed petitioner to serve Takihana with the petition and the OSC.

On August 24, 2017, the CHP served its response to the OSC. The CHP argued that the car should not be returned to petitioner "because there are conflicting, competing claims of ownership of the car, and the CHP is unable to determine who is the true owner." The CHP indicated it was no longer investigating the stolen car report as a criminal matter. However, it declined to return the car without a court order, believing liability "would flow" if it gave the car to the "wrong claimant." It contended petitioner had presented insufficient evidence that he owned the car, and claimed it had no duty to return the car under *Ensoniq* because that case's holding applied to "true" owners only. It urged that responsibility for the car should be transferred to the trial court via an interpleader proceeding to resolve the competing claims of ownership.

Petitioner's reply argued that there was no legal basis for the CHP to continue to detain the car. He also filed a declaration outlining the harm that might come to the car if it were being improperly stored. He explained that "continued storage of a fragile 70 year-old automobile in a facility whose employees are not trained to care for such vehicles is likely to cause serious, possibly irreparable harm. Among other things, this all-aluminum Cisitalia is particularly vulnerable to moisture and needs to be in a controlled, dehumidified environment."

On August 31, 2017, the trial court held a hearing on the OSC. At the hearing, the court inquired into the status of court proceedings in Japan regarding the car. Counsel for the CHP represented that one person had been arrested and "there's been no confirmation whether criminal proceedings will be instituted. There is [an] ongoing civil proceeding." She also said she had been in contact with a California lawyer representing Takihana, who would be appearing in court at some point. Counsel also told the court that the car was being properly stored "in a temperature constant environment without humidity away from people and tools . . . ." She further explained that the identity of the car's custodian

3

had to be kept secret because "there are some, what they call criminal conspiratorial elements, around the transfer of this car along the way to its arrival here in San Mateo and the custodian has indicated that he fears for both his personal safety and the safety of the car if his identity is disclosed." No evidence was submitted in support of counsel's representations.

The trial court discussed with counsel the possibility of entertaining an interpleader action. Petitioner's counsel insisted that under *Ensoniq,* the issue of ownership is separate from the right to possession, arguing that Takihana could assert his ownership rights in a separate action. In the meantime, counsel urged, the car should be returned to petitioner, the person from whom it was seized.

The trial court ultimately denied the petition for writ of mandate without prejudice pending the filing of the interpleader complaint by the CHP. It ordered the CHP to file its complaint by September 8, 2017. In its written order, filed on September 29, 2017, the court also ordered that the car continue to be stored in its current location.

On September 8, 2017, the CHP filed its cross-complaint in interpleader. The document names as cross-defendants all of the persons, including petitioner, White, and Takihana, who had claimed a right to the car at some point in its journey from Japan to California. Takihana filed a cross-complaint.

According to Takihana's cross-complaint, in September 2015 he was seeking financing for a business and was contacted by Ryuji Hasegawa, the principal of Ohtomi. Hasegawa allegedly expressed interest in providing financing if Takihana were willing to provide two Cisitalia automobiles as security.[1] He allegedly told Takihana that he could not confirm the loan unless he could see the cars and have them appraised. Takihana shipped the cars to Hasegawa, who did not make the loan and did not return the cars.

_____

[1] It appears that Takihana claims to own a 1946 Cisitalia as well as the 1947 model that is at issue in this case. The former car is not a subject of this litigation.

4

Attached to Takihana's cross-complaint are documents in Japanese with translations. They appear to show that Takihana acquired the Cisitalia in 2007. Ohtomi is listed on one document as "[o]wner of temporary obliteration period," although it is unclear what this means. The documents also show confirmation of the Cisitalia's export in 2015.

On September 29, 2017, petitioner filed the instant petition.

On November 2, 2017, we issued a stay of the trial court proceedings and an order to show cause why the petition filed in this court should not be granted. We requested preliminary opposition, and both the Attorney General and Takihana have submitted responses.

## DISCUSSION

### I. *Propriety of Writ Proceeding*

The trial court's order denied petitioner's petition for writ of mandate without prejudice, but it left open for resolution in the interpleader action his causes of action for declaratory and injunctive relief. Consequently, the court's order did not dispose of all of his causes of action, and some remain pending.

"Although a petition for writ of mandate is a special proceeding, and '[a] judgment in a special proceeding is the final determination of the rights of the parties therein[]' [citation], the denial of a petition for writ of mandate is not appealable if other causes of action remain pending between the parties." (*Nerhan v. Stinson Beach County Water Dist.* (1994) 27 Cal.App.4th 536, 540.) Because the trial court's order did not resolve all of petitioner's causes of action, it was not a final determination of the rights of the parties and is thus not an appealable order. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 ["Unless the order also resolved plaintiffs' other three causes of action, there would not be a final determination of the parties' rights and thus the order

5

could not be an appealable judgment."].) Thus, petitioner does not have an immediate remedy by appeal, and the challenged order may be reviewed by writ only.[2]

## II.   Ensoniq

Petitioner seeks a writ of mandate to compel the CHP to carry out what he claims is its ministerial duty to return the car to him. In addition, he seeks supplemental writs of prohibition to restrain the interpleader proceedings, along with a writ of certiorari to further compel the CHP to return the car to him. The parties appear to agree that *Ensoniq*, *supra*, 65 Cal.App.4th 1537 is the authority most closely on point.

In *Ensoniq*, an individual named Jon Dattoro was employed as a design engineer by Ensoniq Corporation, which developed computer software to operate musical instruments. (*Ensoniq*, *supra*, 65 Cal.App.4th at p. 1543.) In the course of his employment, Dattoro maintained engineering notebooks "in which he recorded his progress in developing mathematical computations and algorithms for Ensoniq products." (*Ibid.*) Dattoro resigned from Ensoniq and moved to Palo Alto, bringing with him his engineering notebooks and certain other items he had acquired through his work at the company. (*Ibid.*)

Subsequently, Ensoniq's attorney contacted the Santa Clara County District Attorney's office to report the theft of its trade secrets. (*Ensoniq*, *supra*, 65 Cal.App.4th at p. 1543.) The district attorney obtained a search warrant for Dattoro's residence and vehicle, and executed the warrant at Dattoro's home. (*Ibid.*) "The property seized included engineering notebooks, source code, documents and papers, computer discs, computer drives, data tapes, and computer chips." (*Id.* at pp. 1543–1544.) The deputy district attorney reviewed the evidence gathered in the investigation and decided not to

---

[2] On January 24, 2018, we asked the parties to brief whether petitioner had a speedy and adequate remedy by filing a claim and delivery action. We received letter briefs and have determined that writ proceedings are appropriate under the particular circumstances of this case.

6

prosecute Dattoro because of insufficient evidence. (*Id.* at p. 1544.) He emphasized his " 'decision was *not* based upon any determination by me or my office that Mr. Dattoro was the rightful owner of the property seized from his residence.' " (*Ibid.*)

Dattoro then filed a motion for return of property under Penal Code sections 1536,[3] 1539,[4] and 1540.[5] (*Ensoniq, supra*, 65 Cal.App.4th at p. 1544.) He argued that the property should be returned to him because it had not been shown to be stolen. (*Ibid.*) Ensoniq filed its own motion for return of property pursuant to Penal Code section 1407 et seq.[6] (*Id.* at p. 1545.) At the hearing on the competing motions, the deputy district attorney confirmed that no criminal charges had been filed against Dattoro, explaining, " '[W]e're in possession as a sort of neutral party of property seized under warrant by a judge.' " (*Ibid.*) The trial court determined that Ensoniq had no standing either to bring or be a party to a motion for return of the seized property. (*Ibid.*) However, it also ruled

---

[3] Penal Code section 1536 provides: "All property or things taken on a warrant must be retained by the officer in his custody, subject to the order of the court to which he is required to return the proceedings before him, or of any other court in which the offense in respect to which the property or things taken is triable."

[4] Penal Code section 1539, subdivision (a) provides: "If a special hearing is held in a felony case pursuant to Section 1538.5, or if the grounds on which the warrant was issued are controverted and a motion to return property is made (i) by a defendant on grounds not covered by Section 1538.5, (ii) by a defendant whose property has not been offered or will not be offered as evidence against the defendant, or (iii) by a person who is not a defendant in a criminal action at the time the hearing is held, the judge or magistrate shall proceed to take testimony in relation thereto, and the testimony of each witness shall be reduced to writing and authenticated by a shorthand reporter in the manner prescribed in Section 869."

[5] Penal Code section 1540 provides: "If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken."

[6] Penal Code section 1407 provides: "When property, alleged to have been stolen or embezzled, comes into the custody of a peace officer, he shall hold it subject to the provisions of this chapter relating to the disposal thereof."

7

that the People could present evidence that Ensoniq was the rightful owner. (*Id*. at pp. 1545–1546.)

The Court of Appeal granted review by writ of mandate. (*Ensoniq*, *supra*, 65 Cal.App.4th at pp. 1543, 1546.) The court first discussed the Penal Code provisions that are applicable to the return of seized property. (*Id*. at pp. 1546–1547.) It noted the statutes provide that only legal property may be returned to the person from whom it was taken. (*Id*. at p. 1547.) Under Penal Code section 1422, " 'stolen property is not to be returned to the possession of the person from whom it was taken, even if that person was not charged with or convicted of any crime and even if a third party owner is not found.' " (*Id.* at p. 1549, quoting *People v. Superior Court (McGraw)* (1979) 100 Cal.App.3d 154, 158.) The problem for the *Ensoniq* court was that the relevant code sections are "silent as to the appropriate procedure to follow in making the initial determination as to whether property seized under a search warrant *is* in fact stolen, when there is no conviction of theft and no criminal charge pending." (*Ensoniq*, at p. 1549.)

As to the appropriate procedure, the *Ensoniq* court held: "We find that *due process requires the People to prove by a preponderance of the evidence that the seized property was stolen or embezzled*, in a situation where no charges are pending and no conviction has been obtained. Although it may be suspected that the seized property was stolen, that fact must be proven by due process of law. [Citation.] 'Evidence Code section 637 provides that the "things which a person possesses are presumed to be owned by him." ' [Citation.] Thus, with regard to a determination of theft under [Penal Code] section 1411,[7] the court in *McGraw* concluded that '. . . the subject property is presumed

---

[7] Penal Code section 1411, subdivision (a) provides, in part: "If the ownership of the property stolen or embezzled and the address of the owner . . . can be reasonably ascertained, the peace officer who took custody of the property shall notify the owner . . . by letter of the location of the property and the method by which the owner may obtain it. This notice shall be given upon the conviction of a person for an offense involving the theft, embezzlement, or possession of the property, or if a conviction was not obtained,

8

to be owned by the [persons from whom the property was seized] until the state has presented evidence which would support a finding that they did not in fact own the property. *The People would be required to prove the property was stolen* by a preponderance of the evidence, as in all determinations of ownership. . . . [¶] . . . In the event the People fail in their burden of proving the property to be stolen, then the property *must be returned to* [*the persons from whom the property was seized*].' " (*Id*. at pp. 1549–1550, italics added.)

The *Ensoniq* court went on to hold that Dattoro's motion for return of property had to be granted because the People did not allege and could not prove that the seized property was stolen. (*Ensoniq*, *supra*, 65 Cal.App.4th at p. 1551.) Indeed, the court held that "[t]he motion should be granted and actual possession of the physical items awarded to Dattoro without an evidentiary hearing or any participation in the proceedings by Ensoniq." (*Ibid*.) This was because there was no dispute that no criminal charges had been filed against Dattoro, and the People "were 'neutral' and 'took no position' with regard to the seized property." (*Id*. at pp. 1551–1552.) The court therefore issued a writ of mandate directing the trial court to grant the motion for return of property and return actual possession of the seized items to Dattoro. (*Id*. at pp. 1554–1555.)

The *Ensoniq* court also reached two other conclusions relevant to the instant petition. First, it ruled that the trial court had properly found that Ensoniq lacked standing, since Penal Code section 1407 et seq. permits an application by a third party claimant for delivery of stolen property only, and those sections did not apply where the People had not chosen to allege that Dattoro stole the seized property. (*Ensoniq*, *supra*, 65 Cal.App.4th at p. 1552.) Second, the court made clear its disapproval of the trial court's decision to "fashion[] a proceeding in which Dattoro's motion for return of property would be determined by an evidentiary hearing at which Dattoro and the People

upon the making of a decision by the district attorney not to file the case or upon the termination of the proceedings in the case."

9

would both have the opportunity to present evidence regarding ownership of the seized property . . . ." (*Id.* at pp. 1552–1553.)

### III.    *Application*

Petitioner contends that the trial court's order approving the interpleader action conflicts with *Ensoniq.* He surmises that the lower court conflated the issues of ownership and possession in rendering its decision. In petitioner's view, the only issue before the superior court at this stage was who had the right to present possession of the Cisitalia. He does not dispute Takihana's right to file an independent civil action to establish ownership. He argues that under *Ensoniq*, however, the CHP must either prove by a preponderance of the evidence that he stole or embezzled the property or it must release the car to him. (See *Ensoniq*, *supra*, 65 Cal.App.4th at p. 1550 [third party claimant has no standing to prove ownership until "the People have proven by a preponderance of the evidence in a special proceeding that the person from whom the property was seized stole or embezzled it"].)

We agree that *Ensoniq* requires the CHP to return the car to petitioner. As he correctly notes, the CHP has not only decided not to seek criminal prosecution, it proffered no evidence in response to the trial court's OSC. Nor has the CHP contradicted his evidence showing that he legitimately purchased the car. Under these circumstances, the due process principles set forth in *Ensoniq* require the car be returned to him.

Further, under *Ensoniq,* it is immaterial whether a third party considers itself entitled to the property. Nor does it matter that the law enforcement agency in question cannot resolve the conflicting claims of ownership. (See *Ensoniq*, *supra*, 65 Cal.App.4th at pp. 1551–1552.) Instead, under *Ensoniq,* that issue "is to be decided in a separate proceeding, after the law enforcement agency has complied with its due process obligations."

10

Petitioner also cites to the *Ensoniq* opinion for the proposition that "the only question to be decided at this stage is 'the right of actual possession,' "[8] a determination which " 'has no effect upon the parties' competing claims to ownership . . . .' " (See *Ensoniq*, *supra*, 65 Cal.App.4th at pp. 1542–1543.)  Just like the third party in *Ensoniq*, Takihana is free to pursue any civil remedies he may have, but he may not intervene or otherwise appear in the proceeding brought to compel the car's return.  (*Id.* at p. 1550.)  Petitioner asserts the CHP's attempt to interplead Takihana "has, in effect, allowed him to intervene via cross-complaint in a matter where he has no standing to appear."  The contention is persuasive

Petitioner's property rights are clearly implicated in this case.  He observes that in addition to being deprived of his ownership interest in a vehicle for which he paid more than $1 million (a deprivation that would continue over the life of the CHP's interpleader action), "the vehicle itself is threatened with being damaged beyond repair as a consequence of receiving inadequate care in CHP storage."  He also notes the CHP has offered no evidence in support of its counsel's representations as to the car's safety.

The CHP argues that *Ensoniq* does not establish "a clear, present and ministerial duty to return the car [to petitioner]."[9]  The CHP first notes (correctly) that *Ensoniq* involved a motion for return of property in the context of a criminal proceeding, which is not the case here.  Instead, here the car was seized under the authority of Vehicle Code sections 22653, subdivision (a) and 22655.5, subdivision (a), which authorize a peace officer to remove a car from private property without a warrant upon a report that the car is stolen, or on probable cause to believe a car was used to commit a crime.  On this basis, the CHP argues that *Ensoniq* does not apply.

---

[8] The CHP admits the car was in petitioner's possession when its officers seized it.

[9] Under Code of Civil Procedure 1085, a writ of mandate issues to compel performance of a clear, present, and ministerial duty that is prescribed by law, or where there is an abuse of discretion.  (Code Civ. Proc., § 1085; *Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1264–1265.)

11

The obvious flaw in this argument is that the CHP has concluded its investigation and has never alleged that petitioner committed *any* criminal offense. Even assuming that Takihana's allegations are true, there is no suggestion that petitioner was aware that anyone in Japan had absconded with the vehicle before he elected to purchase it. Thus, at most, petitioner is the unwitting purchaser of a stolen car. Moreover, accepting the CHP's argument would mean that petitioner, who has *never* been accused of a crime, would have *fewer rights* regarding seized property than Dattoro, who was suspected of theft and was the subject of a search warrant. (*Ensoniq*, *supra*, 65 Cal.App.4th at pp. 1543–1544.) That would seem to turn ordinary notions of due process on their head. (Cf. *Gershenhorn v. Superior Court* (1964) 227 Cal.App.2d 361, 365 ["To say that a citizen has a prompt and simple remedy for the return of his property when a warrant was involved, but no such remedy where a warrant is neither sought nor used, is to reverse the constitutional order of importance and would induce law enforcement officers to dispense with, rather than to use, the orderly procedure which the Constitution clearly prescribes."].)

The CHP also seeks to distinguish *Ensoniq* on its facts, claiming that in that case the district attorney took a neutral position on the request for return, whereas in this case the CHP is "not neutral" because it has objected to returning the car to petitioner. However, while the deputy district attorney in *Ensoniq* did not contest Dattoro's request for return of the seized property, he also commented, " 'It seems to me that we're in possession as a sort of neutral party of property seized under warrant by a judge.' " (*Ensoniq*, *supra*, 65 Cal.App.4th at p. 1545.) This is virtually identical to the position the CHP took below, where it characterized itself as "a defendant-stakeholder . . . ha[ving] no interest in the property held." Moreover, the CHP has been clear that its sole reason for opposing release of the car to petitioner is its fear of liability that might arise if the car is released to the "wrong" party, not because it does not perceive itself as "neutral" with respect to which party owns the car.

The CHP also contends the due process principles on which the *Ensoniq* court relied do not require return of the car to petitioner, since the CHP cannot determine the car's rightful owner. This argument ignores *Ensoniq*'s teaching as to the presumption of ownership that attaches to petitioner's possession of the car. (See *Ensoniq*, *supra*, 65 Cal.App.4th at p. 1549, citing to Evid. Code, § 637.) The fact that petitioner has not yet obtained California registration and title to the car is not determinative, as the car was admittedly in his possession when it was seized. Perhaps more important, the CHP places the burden of proof on the wrong party. *Ensoniq* is clear that "due process requires the People to prove by a preponderance of the evidence that the seized property was stolen or embezzled, in a situation where no charges are pending and no conviction has been obtained." (*Ensoniq*, at p. 1549.) In this case, the CHP has made no effort whatsoever to prove that the car was stolen. Indeed, in the court below, the CHP presented no evidence at all, relying instead on the representations of its counsel.

In justifying the trial court's denial of petitioner's petition for writ of mandate, the CHP postulates that it would not be immune from liability under Government Code section 821.6 (section 821.6) if it returns the car to the "wrong" claimant. While the issue is not directly before us, we note the CHP's justification appears to be questionable.

"Section 821.6 provides that '[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.' This immunity provision is to be construed broadly so as to further 'its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits.' [Citations.] For purposes of this immunity provision, investigations are deemed to be part of judicial and administrative proceedings." (*Strong v. State of California* (2011) 201 Cal.App.4th 1439, 1461 (*Strong*).)

Section 821.6 not only "immunizes . . . the act of filing or prosecuting a judicial or administrative complaint, but also extends to actions taken in preparation for such formal

13

proceedings," including "[a]n investigation before the institution of a judicial proceeding" and "[a]cts undertaken in the course of an investigation." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048.) Such an investigation is considered to be part of the prosecution of a judicial proceeding for purposes of the statute, even if the authorities later decide not to file charges. (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293.) Officers are also immune from claims made by those who are not the actual targets of the investigation of the prosecution, but who happen to be injured by decisions an officer makes during the course of such investigation. (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1213–1214.) This is because officers must be free to use their honest judgment uninfluenced by fear of litigation or harassment in the performance of their duties. (*Id.* at pp. 1212–1213.)[10]

Additionally, "[t]he California Supreme Court has observed that although ' "section 821.6 has primarily been applied to immunize prosecuting attorneys and other similar individuals, this section is not restricted to legally trained personnel but applies to all employees of a public entity. [Citation.]" [Citation.] Section 821.6 "applies to police officers as well as public prosecutors since both are public employees within the meaning of the Government Code." ' " (*Strong*, *supra*, 201 Cal.App.4th at p. 1461.)

*Strong* is instructive. In *Strong,* a highway patrol officer, while investigating a traffic collision, either lost or destroyed the identifying information of one of the parties to the accident. The injured party sued the officer for negligence. (*Strong*, *supra*, 201 Cal.App.4th at pp. 1444–1445.) The court found that there was no cause of action against the officer for such conduct, and even if there was, the officer was immune from such liability pursuant to section 821.6. With respect to duty, the court observed that

---

[10] Government Code section 815.2, subdivision (b) provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

14

"[w]hen a CHP officer conducts an accident investigation, the intended beneficiary of that investigation is the prosecuting agency charged with the responsibility of instituting criminal cases, not private parties contemplating civil action." (*Strong*, at p. 1457.) The court also concluded the CHP officer was cloaked with the immunity of section 821.6 because he was conducting an investigation when he lost or destroyed information that would have identified a driver who had been involved in a collision. (*Strong*, at p. 1461.)

Here, assuming the CHP owes Takihana any duty, it is difficult to see why this immunity would not apply to the CHP under the circumstances of this case. The CHP was conducting a legitimate law enforcement investigation when it seized the Cisitalia. While the seizure did not ultimately lead to the institution of criminal proceedings, that is not a necessary prerequisite to the application of the immunity. Further, as we now are ordering the CHP to return the car to petitioner, we have effectively absolved the CHP of responsibility for this outcome.

Finally, the CHP asserts that the interpleader action will provide petitioner with sufficient due process. However, again, it is undisputed that he was in possession of the Cisitalia when the CHP seized the car. It is also undisputed that he obtained possession of the car from Japan through a financial transaction. Under the rationale of *Ensoniq,* petitioner has an immediate right to possession of the car and the proposed interpleader action would merely serve to further deprive him of his right. The CHP essentially admits it cannot affirmatively demonstrate that the car was stolen or embezzled. Accordingly, it has no alternative but to return it to petitioner under the principles of due process set forth in *Ensoniq*.[11]

---

[11] The CHP asserts it had no obligation to present evidence in the trial court because he had initiated the mandate action by service of summons, which gave the CHP 30 days to respond. We note the CHP has not offered any evidence in this court in response to our order to show cause.

15

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to (1) vacate its order of September 29, 2017, and (2) enter a new and different order granting the writ and returning actual possession of the seized Cisitalia to petitioner.[12] Each party to this writ proceeding is to bear his or its own costs.

---

[12] Petitioner also contends that supplementary writs of prohibition and/or certiorari are necessary to undo the CHP's and trial court's errors. Specifically, he asserts the interpleader should be halted, and requests that we issue a writ of prohibition directing that the interpleader procedure be stayed or dismissed, citing to Code of Civil Procedure section 1102. Also, to the extent the court's approval of the interpleader filing has transferred control over the car to the trial court, he asserts we should issue a writ of certiorari directing that control be returned to the CHP. (Code Civ. Proc., § 1068.) We conclude our disposition as stated is sufficient.

16

_____
Dondero, J.

We concur:


_____
Humes, P. J.


_____
Banke, J.

*A152513  Lawrence v. Superior Court*

17

Trial Court: San Mateo County Superior Court

Trial Judges: Hon. John Runde

Counsel:

Chauvel & Glatt, LLP, Kenneth M. Weinfield for Petitioner Brandon Lawrence

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Anthony R. Hakl, Supervising Deputy Attorney General, and S. Michele Inan, Deputy Attorney General, for Real Party In Interest California Highway Patrol

J. Scott Souders, P.C., J. Scott Souders for Real Party In Interest Kiyoshi Takihana

*A152513  Lawrence v. Superior Court*