Filed 10/15/20  Rondon v. Mendocino County CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANDRES RONDON,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>MENDOCINO COUNTY, et al.,<br><br>　　　　Defendants and Respondents. | A159474<br><br>(Mendocino County<br>Super. Ct. No.<br>SCUKCVPO1972649) |

Andres Rondon brought this action against Mendocino County, its sheriff, Thomas Allman, and two deputy sheriffs, Darren Brewster and James Wells, for losses allegedly suffered when the deputies entered his cannabis farm pursuant to a search warrant and destroyed his crops and other property.  The trial court sustained defendants' demurrer without leave to amend, based on its conclusion that their actions were protected by governmental immunity.  (Gov. Code, §§ 815.2, 821.6.)[1]  We shall affirm the ensuing judgment of dismissal.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I. Allegations of the Complaint**

In the operative first amended complaint, Rondon alleges he owns and operates a cannabis farm in Mendocino County, and that he is licensed and

_____

[1] All undesignated statutory references are to the Government Code.

1

registered as a cannabis cultivator and in full compliance with all legal requirements for cultivating cannabis.

Rondon was in Southern California on the morning of October 21, 2018, when an employee called to tell him there were robbers at the farm. Rondon called the Mendocino County Sheriff's Office, reported the robbery, told them the farm was a licensed and registered cannabis cultivation operation, and asked them to send sheriffs to the farm. When sheriff's deputies went to the farm two hours later, they did not try to find or apprehend the robbers. They left the farm and obtained a search warrant, based on an affidavit by defendant Brewster that asserted it had been determined that the farm was not licensed and registered for cannabis cultivation and Rondon was violating state law. Rondon alleges these statements were made in bad faith, intentionally and fraudulently, and with reckless disregard for the truth of the statements made under penalty of perjury. The address provided in the search warrant was incorrect, in that it transposed two of the numbers in the farm's street address. And the affidavit in support of the warrant did not disclose that the owner of the farm had told the 911 dispatcher his farm was fully licensed and registered for cannabis cultivation.

The deputies who returned to the farm with the search warrant brought with them a wood chipper, showing their intent not to carry out an investigation but to destroy the cannabis on the property. They destroyed approximately $365,000 worth of cannabis and plant cuttings, as well as light deprivation gardens, coverings, and lighting equipment worth approximately $50,000, and seized personal property, including Rondon's permits. Their actions deprived Rondon of his next crop cycle as well, with a value of $350,000.

Rondon alleged the Mendocino County Sheriff's Office had a history and pattern of unlawful raids, confiscations, and destruction of cannabis, supporting a conclusion that defendants' actions were undertaken maliciously, in bad faith, and in deliberate disregard for their legal responsibilities.

Rondon asserted four causes of action: liability under the California Government Claims Act (§ 810 et seq.), trespass, interference with constitutional rights under the Tom Bane Civil Rights Act (Civ. Code, § 52.1), and conversion.

## II. Demurrer and Ruling

Defendants demurred to the first amended complaint. They contended they were immune under sections 821.6 and 815.2 because all Rondon's claims were based on their actions connected to seeking and executing a search warrant. They also asserted a number of other grounds for demurrer, including failure to state a cause of action and uncertainty. In support of their demurrer, they requested judicial notice of the search warrant, which authorized defendants to search for, inter alia, marijuana, and to bring any seized items to court, "or retain such property in your custody subject to the order of this Court pursuant to Section 1563 of the Penal Code, or if applicable, dispose of per section 11479.5 or 11479 of the Health and Safety Code."[2]

---

[2] We grant defendants' July 14, 2020 request to augment the record with certain documents filed in the trial court. One of those documents is their request for judicial notice of the search warrant. We take judicial notice of the search warrant. (Evid. Code., §§ 452, subd. (d), 459, subd. (a); see *Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 185 (*Linda Vista*) [where trial court's order did not expressly show whether request for judicial notice granted, appellate court assumed trial court took notice].) We also grant defendants' July 22,

The trial court granted the demurrer without leave to amend on the ground the facts alleged showed defendants were immune pursuant to sections 815.2 and 821.6. The court then dismissed the case with prejudice. This timely appeal ensued.

## DISCUSSION

### I. Standard of Review

Our standard of review of a judgment after a demurrer has been sustained without leave to amend is well settled. We treat the demurrer as admitting all material facts properly pleaded, but we do not assume the truth of contentions, deductions, or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.) We also consider matters properly subject to judicial notice as if they had been pled. (*Linda Vista*, *supra*, 234 Cal.App.4th at p. 180.) We affirm the judgment if any of the grounds for demurrer is well taken, but not if the plaintiff has stated a cause of action under any possible legal theory. (*Aubry*, at p. 967.)

We review the denial of leave to amend for abuse of discretion, finding such abuse if the plaintiff has shown a reasonable possibility any defect may be cured by amendment. (*G. L. Mezetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1091–1092.)

### II. Governmental Immunity

Rondon contends the trial court erred in finding defendant's alleged actions protected by governmental immunity. Two statutes underlie this question. First, section 821.6, part of the Government Claims Act, provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his

---

2020 request for judicial notice of the return to the warrant, which was filed in the trial court on October 30, 2018.

4

employment, even if he acts maliciously and without probable cause." Second, under section 815.2, subdivision (b), "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

California courts have interpreted section 821.6 expansively to include acts taken in preparation for formal proceedings, such as investigations of suspected crimes, in order "to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048 (*Gillan*); see also *Lawrence v. Superior Court* (2018) 21 Cal.App.5th 513, 527 (*Lawrence*).) Even if the officers abuse their authority or act maliciously as part of a threatened prosecution, "[a]cts undertaken in the course of an investigation . . . cannot give rise to liability." (*Gillan*, at pp. 1048–1050 [immunity from defamation and intentional infliction of emotional distress based on public statements].) This rule covers matters "incidental to the investigation" (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1210–1211 (*Amylou R.*), such as statements made to a witness to a crime that caused emotional distress (*ibid*.) and statements made in press releases (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293). It also includes such matters as the suppression of exculpatory evidence during a criminal prosecution. (*Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 456–457 (*Randle*).) Significantly for this case, the rule has been applied even where the investigation results in no criminal charges being filed. (See *Lawrence*, *supra*, 21 Cal.App.5th at pp. 525, 527.)

This principle is illustrated in a case analogous to the one before us, *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218 (*County*

*of Los Angeles*).  There, during the course of a criminal investigation, investigators for a district attorney obtained a search warrant for and seized computer hard drives, a network server, and a laptop, and then the case was closed without charges being filed.  (*Id*. at pp. 223–224.)  The plaintiffs brought an action against the county and the district attorney alleging injury from the search and from the seizure of, and damage to, their property, asserting that defendants irreparably destroyed computer data and failed to return some property until after plaintiffs filed their complaint.  (*Id*. at pp. 224–225.)  In considering the cause of action under Civil Code section 52.1, the appellate court concluded the defendants' actions were shielded by section 821.6 because there was a "causal relationship between the act and the prosecution process," even though no charges were ever filed.  (*Id*. at p. 229.)  The court reasoned, "all of the acts—investigating, *obtaining* the warrant, searching, *seizing*, retaining, and even *damaging* plaintiffs' property—were committed as part of an investigation of crimes leading to prosecution in a judicial proceeding.  This conduct fell within the scope of the investigating staff members' employment with the County.  Hence, the elements of Government Code section 821.6 immunity are present, even if the district attorney's investigating staff 'act[ed] maliciously and without probable cause.' (§ 821.6.)" (*County of Los Angeles*, at p. 230, italics added.)

A similar result obtained in *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 185–186 (*Baughman*), in which the plaintiff alleged defendant wrongfully destroyed computer disks containing his research when carrying out a search for stolen material pursuant to a warrant.  In finding the cause of action for conversion barred by section 821.6 and 815.2, the court reasoned that the officers were acting within the scope of their duties when they destroyed the disks "while investigating a crime pursuant to a search

6

warrant concerning such media," and their actions were therefore "cloaked with immunity." (*Baughman*, at p. 192.)

Consistent with these authorities, we conclude defendants' actions here were similarly cloaked with immunity. The deputy sheriffs—as Rondon alleges—were acting in the scope of their official duties, as they first obtained and then executed a search warrant authorizing them to search for marijuana. The warrant specifically authorized them to *dispose* of marijuana pursuant to Health and Safety Code section 11479, "if applicable." Under certain conditions, this statute permits law enforcement agencies, after seizure of a suspected controlled substance such as "growing or harvested cannabis," to preserve a representative sample and destroy the rest. (Health & Saf. Code, §11479.) Although the address on the warrant contained a clerical error, the allegations of the complaint show defendant's property was the intended target of a search pursuant to the warrant for marijuana. We would be hard pressed to conclude there was no causal relationship between the investigation of possible crime and the actions Rondon challenges, or that defendants' challenged actions were not incidental to the investigation. Rondon argues that, by bringing a wood chipper when they returned to execute the warrant, the deputies revealed their intentions as unrelated to investigating crime, but this argument ignores that state law allows deputies investigating allegations of an illegal marijuana grow to retain only a portion and destroy the remainder of the crop.

Against this conclusion, Rondon argues governmental immunity in this context extends only to causes of action for malicious prosecution. For this limitation, he relies on *Sullivan v. City of Los Angeles* (1974) 12 Cal.3d 710 (*Sullivan*). The issue in *Sullivan* was "whether an individual who is confined in a county jail beyond his proper jail term may maintain an action for false

7

imprisonment against the county or whether such a suit is barred by the governmental immunity of the California Tort Claims Act." (*Id*. at p. 713.) Our high court concluded the claims were not barred by governmental immunity, rejecting the County's argument that section 821.6 protected the sheriff's activities. (*Id*. at pp. 713, 722.) The court noted first that the language of that statute, which applies to injury caused by "instituting or prosecuting" a judicial or administrative proceeding, does not encompass holding beyond his jail term a person who has already been convicted and sentenced. (*Id*. at p. 719.) Second, the court reasoned, "the history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for *malicious prosecution* and not for *false imprisonment*." (*Ibid*.) The court continued: "Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime. [Citations.] Similarly the suits against government employees or entities cited by the Senate Committee in commenting upon section 821.6 all involve the government employees' acts in filing charges or swearing out affidavits of criminal activity against the plaintiff. No case has predicated a finding of malicious prosecution on the holding of a person in jail beyond his term or beyond the completion of all criminal proceedings against him." (*Id*. at p. 720, fn. omitted.) The court also noted that its interpretation was bolstered by another provision of the statutory scheme, section 820.4, which explicitly preserves governmental liability for false imprisonment. (*Id*. at p. 721; accord, *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 756–757 [police officer has statutory immunity for malicious prosecution, but not for false arrest and imprisonment].)

8

Rondon argues that *Sullivan* means that section 821.6 does not protect defendants' actions because he was not arrested or charged with a crime and he does not assert a claim for malicious prosecution. We do not read *Sullivan* so narrowly. First, the plain language analysis in *Sullivan* points in a different direction here, where the alleged acts of investigation—sloppy or malicious as they may have been—are reasonably characterized as part of a process of "instituting," or initiating, a criminal complaint. (§ 821.6.) That the process was aborted before criminal charges were actually filed does not gainsay this nexus. Second, *Sullivan* describes the precedents that the Legislature sought to codify in section 821.6 as granting immunity for "government employees' acts in . . . swearing out affidavits of criminal activity against the plaintiff" (*Sullivan, supra*, 12 Cal.3d at p. 720), which aptly captures the deputies' conduct here in obtaining the search warrant. California appellate court cases construing *Sullivan* have consistently held that its holding does not limit section 821.6 to cases alleging the tort of malicious prosecution. For instance, *Randle, supra*, 186 Cal.App.3d at pp. 456–457, concludes that section 821.6 immunizes a prosecutor's or police officer's suppression of evidence during a prosecution already begun. *Randle* distinguishes *Sullivan* on the ground that *Sullivan* arose in "the specific context of distinguishing actions for malicious prosecution from ones for false arrest or false imprisonment," concepts that are "mutually inconsistent . . . , the former relating to conduct that is without valid legal authority and the latter to conduct where there is valid process or due authority." (*Id*. at p. 456.) This distinction between unauthorized acts and acts pursuant to valid, if corrupt, process is one the California Supreme Court embraced in *Asgari, supra*, 15 Cal.4th at p. 757, and the distinction reinforces our conclusion that section 821.6 immunizes the conduct here. Acts of procuring

9

and executing a search warrant epitomize "valid process," however carelessly or maliciously pursued here. Other cases that conclude section 821.6 immunizes tortious conduct beyond acts of malicious prosecution, even as it does not protect false arrests or imprisonment, include *Gillan*, *supra*, 147 Cal.App.4th at pp. 1048–1049 [immunity "extends to actions taken in preparation for" filing a criminal complaint] and *Amylou R.*, 28 Cal.App.4th at pp. 1209–1211 & fn. 2 [same]. (See also *Javor v. Taggart* (2002) 98 Cal.App.4th 795, 799, 807–809 [§ 821.6 barred claims for slander and clouding of title, intentional infliction of emotional distress, and negligence, for filing workers' compensation lien on an employer's residence].)

Rondon asks us to ignore these authorities and follow instead federal cases adopting a narrower view of section 821.6 in light of *Sullivan*. (See, e.g., *Sharp v. City of Orange* (9th Cir. 2017) 871 F.3d 901, 920–921 [limiting § 821.6 to malicious prosecution claims]; *Mendez v. City of Los Angeles* (9th Cir. 2018) 897 F.3d 1067, 1083 [following *Sharp* to reject § 821.6 immunity for investigation leading up to formal proceedings]; *Garmon v. County of Los Angeles* (9th Cir. 2016) 828 F.3d 837, 846–847.) But these cases engage in little more than cursory analysis, and in light of California courts' consistent interpretation of section 821.6 to extend immunity to activities that are part of an investigation, we decline this invitation. Whatever label Rondon attaches to his causes of action, the gravamen of his case is that defendants swore out an affidavit falsely averring that he was violating state law and obtained a search warrant, based upon which they entered his farm and destroyed his crops and other property. These actions are immune under sections 821.6.

None of the other cases Rondon relies upon persuades us defendants are not entitled to immunity for their alleged actions. Some of these cases

involve actions taken after an investigation or prosecution was compete, which were thus unconnected to "instituting or prosecuting" (§ 821.6) a proceeding. (*Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 463; *Tallmadge v. County of Los Angeles* (1987) 191 Cal.App.3d 251, 253–255; *Green v. City of Yuba* (E.D.Cal. Feb 20, 2019, No. 2:18-cv-02234-JAM-AC) 2019 U.S. Dist. Lexis 27949, *16–*17.) Others involve claims for false arrest or false imprisonment. (*Harden v. San Francisco Bay Area Rapid Transit Dist.* (1989) 215 Cal.App.3d 7, 17; *Laible v. Superior Court* (1984) 157 Cal.App.3d 44, 53; *McKay v. City of San Diego* (1980) 111 Cal.App.3d 251, 256; *Blankenhorn v. City of Orange* (9th Cir. 2007) 485 F.3d 463, 488.) Still others consider actions taken by public employees who were not investigating anything nor initiating prosecution. (*Bell v. State of California* (1998) 63 Cal.App.4th 919, 929 [public employees were "simply seeing to the execution of" arrest warrant, not investigating]; *Phillips v. City of Fairfield* (E.D. Cal. 2005) 406 F.Supp.2d. 1101, 1118 ["buy-bust" drug operation is not investigation in preparation for judicial proceedings (italics omitted)].)

We find similarly unpersuasive Rondon's reliance on cases that do not consider the scope of section 821.6 at all. (*Perez-Torres v. State of California* (2007) 42 Cal.4th 136, 141–145; *Barner v. Leeds* (2000) 24 Cal.4th 676, 679; *McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 260–264; *Bonner v. City of Santa Ana* (1996) 45 Cal.App.4th 1465, 1468–1470; *Kane v. County of San Diego* (1969) 2 Cal.App.3d 550, 552–553.) Rondon also seeks to rely on cases imposing liability for negligent hiring, training, or supervision (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 865–866, 873 [employee sexually abused student, and no immunity provision applied]; *Ramos v. County of Madera* (1971) 4 Cal.3d 685, 695–696 [county employee coerced people to violate state laws; county had mandatory duty to avoid that

11

harm]; *Dailey v. Los Angeles Unified School Dist.* (1970) 2 Cal.3d 741, 747 [failure to supervise children on school grounds]; *City of Los Angeles v. Superior Court* (1973) 33 Cal.App.3d 778, 782–783 [battery by police officer]), but he fails to explain how those cases either apply to the facts alleged in his complaint or defeat the statutory immunity of sections 821.6 and 815.2, subdivision (b).

We recognize that the application of governmental immunity in a case such as this may cause a substantial hardship to legitimate cannabis farmers whose crops are mistakenly destroyed during an investigation, and we are not unsympathetic. Indeed, we recognize that immunizing the conduct of any illegal search stymies efforts to hold to account rogue law enforcement officers and the agencies who employ them. (Cf., *Jamison v. McClendon* (S.D.Miss. Aug. 4, 2020, No. 3:16-CV-595-CWR-LRA) 2020 U.S.Dist.Lexis 139327, *4–*6] [qualified immunity protects police officer who subjects black man driving a Mercedes to unwarranted and intrusive search for drugs; " '[t]his has to stop' "].) In California, such protection for malicious conduct on the part of public employees has been intentional. When, in 1963, the Legislature adopted section 821.6 at the suggestion of the California Law Revision Commission, it rejected the commission's simultaneous recommendation "that public entities be held liable for damages proximately caused by a public employee's institution of judicial proceedings without probable cause and with actual malice." (*Asgari, supra*, 15 Cal.4th at p. 753, fn. 7; Stats. 1963, ch. 1681, § 2, pg. 3268; Law Revision Com. Rep (1963) p. 841.)

Someday the Legislature, aware of the toll police misconduct takes on members of the public, may choose to revisit this decision. But the Legislature's 1963 decision and a long line of judicial authority broadly

construing section 821.6 compel us to conclude that defendants are immune from liability for the actions alleged in the first amended complaint. Because Rondon does not suggest any manner in which he could amend his complaint to cure this defect,[3] we must affirm the judgment.

## DISPOSITION

The judgment is affirmed.

---

[3] Rondon did not seek to amend to add a section 1983 claim (see 42 U.S.C. § 1983), and we do not consider whether such a claim would be viable.

_____
TUCHER, J.

WE CONCUR:


_____
POLLAK, P. J.


_____
BROWN, J.

*Rondon v. Mendocino County* (A159474)

14