Filed 5/16/23  Turner v. Smith CA1/2
(unmodified opinion attached)
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| STEPHEN TURNER,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>MELODY SMITH et al.,<br><br>　　　Defendants and Respondents. | A164194<br><br>(Alameda County<br>Super. Ct. No. RG11574935)<br>ORDER MODIFYING OPINION,<br>DENYING REHEARING, AND<br>DENYING REQUEST FOR<br>PUBLICATION |

BY THE COURT:

It is ordered that the opinion filed herein on April 26, 2023, be modified as follows:

On page 13, at the end of the paragraph that begins on page 12, insert a footnote with the following text:  "In a petition for rehearing, Turner contends that even if the determination of the conditions of his parole is shielded by statutory immunity, the enforcement of those conditions is not, and therefore immunity does not bar his negligence cause of action to the extent it relies on allegations that Everidge executed the April 2011 search of Turner's motel room (which led to the revocation of Turner's parole) without complying with the "knock-notice" requirement.  To the contrary, because the

1

search was a "parole compliance check," as Turner alleges in his complaint, it was conducted as part of the supervision of Turner to ensure that he was complying with the conditions of his parole, and statutory immunity bars claims for negligence in the supervision of a parolee. (*Brenneman v. State of California*, *supra*, 208 Cal.App.3d at pp. 820-821 [immunity under Gov. Code, § 845.8, subd. (a)]; *Kim v. Walker*, *supra*, 208 Cal.App.3d at p. 382 [immunity under Gov. Code, §§ 821.6 & 845.8].)"

On page 16, at the end of the footnote formerly numbered "6," insert the following language: "Code of Civil Procedure section 437c, subdivision (m)(2) recognizes that in its supplemental brief, a party 'may include an argument that additional evidence relating to that ground [here, issue preclusion] exists, but the party has not had an adequate opportunity to present the evidence or to conduct discovery on the issue.' Turner made no such argument in his supplemental briefing."

The modification does not change the judgment. Appellant's petition for rehearing is denied. Appellant's request for publication is denied.


Dated:_____                    _____
                                               Stewart, P.J.




A164194, *Turner v. Smith*

Filed 4/26/23  Turner v. Smith CA1/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| STEPHEN TURNER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MELODY SMITH et al.,<br><br>    Defendants and Respondents. | A164194<br><br>(Alameda County<br>Super. Ct. No. RG11574935) |

Stephen Turner sued four employees of the Division of Adult Parole Operations of the California Department of Corrections and Rehabilitation, alleging that they imposed and enforced conditions of parole that were improperly based on convictions for lewd and dissolute conduct that had been dismissed.  Turner also alleged that defendants violated the Tom Bane Civil Rights Act (Bane Act, Civ. Code, § 52.1) by threatening him in an attempt to interfere with his right to sue them and by retaliating against him for reporting the threat.

The trial court granted defendants' motion for summary judgment on the ground that Turner's claims were barred by section 845.8, subdivision (a), of the Government Code, which provides that a public employee is not liable for any injury resulting from the determination of the terms and conditions of parole, or for determining whether to revoke parole.  Turner now appeals.

1

We conclude that there is a triable issue of fact as to Turner's Bane Act claim that one of the defendants threatened him that "bad things are going to happen to you" if Turner did not dismiss lawsuits he had filed. Although there are no triable issues of fact as to any of Turner's other causes of action, we reverse the grant of summary judgment because defendants did not move in the alternative for summary adjudication. (See *People ex rel. Government Employees Ins. Co. v. Cruz* (2016) 244 Cal.App.4th 1184, 1197 [when trial court granted summary judgment, but factual dispute exists that "affects fewer than all causes of action, the appellate court may direct the trial court to enter an order granting summary adjudication of the unaffected causes of action *if the moving party alternatively moved for summary adjudication*" (italics added)].)

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Undisputed Facts*

In 1984, Turner was convicted of three misdemeanor counts of lewd/dissolute conduct, based on allegations that he exposed himself and masturbated in the presence of two girls ages 11 and 12. Those convictions were eventually dismissed in the interest of justice under Penal Code section 1385.

In 1993, Turner was convicted on one count of misdemeanor indecent exposure under Penal Code section 314.1. In 1996, the 1993 conviction was expunged in the interest of justice under Penal Code section 1203.4, which provides for the dismissal of the accusations or information against a defendant upon the successful completion of probation.

Turner was a practicing physician at the time of the events underlying the 1984 and 1993 convictions, and was suspended from the practice of medicine as a result of his acts. The Medical Board imposed various terms

2

and conditions for the reinstatement of his medical license, but Turner chose to surrender his license rather than comply.

In 2006, Turner pleaded guilty to grand theft, practicing medicine without a license, mishandling blood samples, and presenting false records, and was sentenced to seven years and eight months in prison.

Turner was released on parole on January 5, 2010, and remained under parole supervision until January 5, 2014. From his release in 2010 until September 2012, Turner was under the supervision of Agent Melody Smith. Smith's immediate supervisor was Agent Gregory Sims, and Agent John Bent supervised both Sims and Smith. Smith, Bent, and Sims are the defendants and respondents in this matter, along with Agent Brett Everidge, who participated in an April 2011 parole compliance check of Turner's motel room.

Upon his entry to parole, Turner was designated a "High Risk Sex Offender" and a "High Control" parolee. He was subject to general conditions, which apply to all parolees, as well as special conditions that are imposed by the Board of Parole Hearings (Parole Board) or by an individual's parole agent. Special conditions imposed by an agent are reviewed and approved by a supervisor. Turner was arrested eight times for parole violations, all during the period he was supervised by Smith. Each of the reports submitted by Smith of Turner's violations and arrests was reviewed and approved by either Bent or Sims. For purposes of this appeal, we need summarize only some of the arrests.

The general conditions of Turner's parole required him to report to his parole agent upon his release from prison; obey his agent's instructions; not travel more than 50 miles from his residence or be absent from his county of residence for more than 48 hours without his agent's prior approval; not leave California without his agent's prior written approval; obey all federal, state,

3

and local laws; and not own, use, or access weapons. Turner was required to register as a sex offender based on his 1993 conviction. Among the initial special conditions of Turner's parole based on the 1993 conviction were that he submit to electronic monitoring, not view pornography, not access the internet except for work purposes, and not live within 2,000 feet of any public or private school or park where children regularly gather. In light of his conviction for the unauthorized practice of medicine, he was prohibited from possessing medical supplies or equipment. From time to time, the conditions of Turner's parole were amended, and we discuss some of those amendments below.

At some point Turner informed Smith that he was searching for a prior girlfriend who had been a prostitute and was currently working in San Francisco as a massage therapist; that he wanted to marry the woman; and that she had custody of a minor daughter.[1] Based on what Smith characterized as Turner's "focused excitement" about spending time with the prior girlfriend's daughter, Smith reviewed Turner's case file and learned that the victims of the offenses leading to the 1984 convictions were the same age as the daughter. On February 24, 2010, Smith further amended Turner's special conditions of parole based on Smith's discovery of his 1984 offenses. As a result of the amendments, Turner was prohibited from contacting minors without prior approval and from dating, socializing, or forming a romantic relationship with any person with physical custody of a minor, without prior approval.

Agents Bent and Sims approved the amended parole conditions.

---

[1] For her privacy and the privacy of her minor daughter, we refer to the woman as the "prior girlfriend," which is apparently how Turner first described her to Smith.

On April 6, 2010, Turner was arrested for violating conditions of his parole, including contacting the prior girlfriend without prior approval and accessing websites for escort services. At a hearing the Parole Board revoked Turner's parole and returned him to custody based on his contacts with the prior girlfriend and on his accessing sexually-oriented material on the internet. The Parole Board reaffirmed Turner's special conditions of parole.

Upon his release from prison in August 2010, Smith further amended Turner's special parole conditions to require that he have permission before contacting the prior girlfriend or accessing the internet. The amended conditions were approved by Sims.

In April 2011 Everidge and another agent conducted a compliance check at Turner's motel room. Smith reported to the motel room after Everidge notified her that he had discovered a pornographic video saved to the downloaded files on Turner's laptop. Turner was arrested for viewing pornography in violation of his special conditions of parole. Turner threatened suicide when he was taken into custody; he was transferred to a psychiatric hospital and cleared for incarceration a few days later. At a hearing, the Parole Board found good cause for the charge that Turner had possessed or viewed pornography in violation of the special conditions of his parole, and ordered him back into custody.

By mid-August 2011, Turner had filed a complaint in this action in Alameda County Superior Court challenging his special conditions of parole.

On December 12, 2011, Turner was arrested by the Alameda County Sheriff's Department based on Smith's report that on December 7 she was informed by another parolee assigned to her that during a sex-offender group session, Turner yelled to the group and counselor, "They can fuck with anyone else, but they ain't fucking with me! I'm too old to be told what to do.

5

What's her name? Melody Smith? By the time I get done with her, she won't be singing any more melodies!" Turner was taken to a psychiatric hospital after threatening suicide, and was cleared for incarceration a few days later. Turner was charged with violating his parole by making a terrorist threat and resisting arrest. At a hearing on January 4, 2012, the Parole Board found good cause for the charge of resisting arrest, but dismissed the threat charge on the grounds that the threat was not specific and immediate.

In April 2012, Turner was arrested for leaving Alameda County without prior approval, failing to turn over his cell phone for search, and contacting the prior girlfriend without prior approval. At a hearing on May 25, 2012, the Parole Board found good cause for the charges except for the charge that Turner failed to turn over his cell phone, which was dismissed for insufficient evidence. The Board returned Turner to custody and reaffirmed his special conditions of parole.

In July 2012, Turner was arrested for failing to register as a sex offender under Penal Code section 290. Turner threatened suicide, was taken to a psychiatric hospital, and was cleared for incarceration a few days later. Based on a report that after his arrest he said he should "take [Smith] out and go to the parole office and take everybody else out," Turner was also charged with criminal threats. At a hearing in September 2012, the Parole Board found probable cause for failure to register and dismissed the threats charge. The Board reaffirmed Turner's conditions of probation.

C. *Proceedings Leading to Summary Judgment*

This action was commenced in 2011. Also in 2011, Turner sued these same defendants in federal district court, alleging they conducted unlawful searches and seizures, violated the knock-and-announce rule, and retaliated against him by conducting parole compliance checks, arresting him for parole

6

violations, and revoking his parole. Turner also alleged that parole conditions barring him from associating with his prior girlfriend or traveling outside the country without prior permission were unconstitutional. (*Turner v. Smith* (N.D. Cal. Mar. 7, 2017) 2017 WL 897333 at *1 (*Turner I*), affd. (9th Cir. 2018) 734 Fed. App'x 460 (*Turner II*), cert. den. (2018) 139 S.Ct. 339.) The district court (Honorable Charles R. Breyer) granted defendants' motion for summary judgment as to Turner's federal law claims, and concluded that it lacked supplemental jurisdiction over his state law claims because none of his federal claims survived summary judgment. (*Turner I* at *6.)

In August 2020, Turner filed the operative Fifth Amended Complaint in this action, alleging several causes of action against Smith, Sims, Bent, and Everidge, including negligence, intentional infliction of emotional distress, and injury to his personal relations in violation of Civil Code section 43, all based on defendants' imposition and enforcement of conditions of his parole.[2] As to Bent alone he alleged a cause of action for negligent hiring and supervision of Smith and Sims.

In addition, Turner alleged two causes of action for violation of the Bane Act (Civ. Code, § 52.1), which authorizes a civil action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise of enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (Civ. Code, § 52.1, subds. (b) & (c).) One of the Bane Act causes of action rests on allegations that on December 7, 2011, Sims threatened Turner

---

[2] Turner's claims against Everidge are based on allegations that he failed to comply with the "knock-notice" requirement before executing the April 2011 parole compliance check.

by stating, "bad things are going to happen to you" unless Turner immediately dismissed his suits against the defendants. The other Bane Act cause of action alleges that Turner was falsely arrested on December 12, 2011, after Smith, Sims, Bent, or some combination of the three ordered his arrest in retaliation for reporting the threat that Sims made against him and for refusing to dismiss his lawsuits.

Turner alleged that as a result of defendants' actions he suffered emotional and mental distress and a deprivation of his civil and statutory rights. Turner sought compensatory and punitive damages, statutory damages and civil penalties under the Bane Act, interest, attorney fees, and costs of suit.

Defendants moved for summary judgment on several theories, including claims of immunity under various sections of the Government Code. The trial court granted the motion based on its conclusion that Turner's claims were barred by Government Code section 845.8, subdivision (a). Judgment was entered for defendants, and Turner timely appealed.

## DISCUSSION

A.    *Standard of Review*

Summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

We view the evidence in the light most favorable to the nonmoving party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) In

8

deciding whether a material factual issue exists for trial, we "consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence." (Code Civ. Proc. § 437c, subd. (c).)

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant can meet this burden by showing "that there is a complete defense to [a] cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) A defendant's initial burden in moving for summary judgment is to come forward with evidence to make a prima facie showing that there is no triable issue of material fact (*Aguilar*, *supra*, 25 Cal.4th at p. 850), where the material facts are determined by the pleadings. (*Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320.) If defendant meets that burden of production, the burden of production shifts to plaintiff to make a showing that there is a triable issue of material fact. (*Ibid.*) "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists." (Code Civ. Proc., § 437c, subd. (p)(2).)

B.    *Statutory Immunity*

Under section 845.8 of the Government Code, "Neither a public entity nor a public employee is liable for:  [¶] (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release." Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for

9

an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." Further, Government Code section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Turner recognizes that these statutes and the case law interpreting them stand for the proposition that decisions to implement special conditions of parole or to revoke parole are generally immunized. In addition, immunity applies to the supervision of a parolee to ensure compliance with parole conditions. (See *Brenneman v. State of California* (1989) 208 Cal.App.3d 812, 820-821 [Gov. Code § 845.8, subd. (a), "bars any state liability for negligent supervision of a released prisoner"]; *Kim v. Walker* (1989) 208 Cal.App.3d 375, 382 [parole officer is "immune for the supervision of appellant and revocation of his parole"], rejected on other grounds in *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239, fn. 7.)

Turner's primary argument on appeal is that his causes of action for negligence, negligent hiring and supervision, intentional infliction of emotional distress, and violation of Civil Code section 43, all of which arise from the imposition and enforcement of conditions of parole that were based on his 1984 convictions, fall outside the scope of the immunity provided by the Government Code sections discussed above. He contends that his 1984 convictions could legally not be the basis of parole conditions because the convictions had been dismissed in 1984 under Penal Code section 1385,[3] and

---

[3] At that time, Penal Code section 1385 provided, "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order

10

that he had repeatedly informed Smith, Sims, and Bent about the dismissal. He relies on *Perez-Torres v. State of California* (2007) 42 Cal.4th 136 (*Perez-Torres*) to argue that once the defendants learned that the convictions had been dismissed under Penal Code section 1385, the continued imposition and enforcement of the conditions imposed on account of those conditions fell outside the scope of statutory immunity. Therefore, he concludes, his causes of action for negligence, negligent hiring and supervision, intentional infliction of emotional distress and violation of Civil Code section 43 are not barred by Government Code immunities.

Turner's argument concerning immunity rests on the false premise that the 1984 convictions could not legally be the basis of parole conditions imposed upon him. To support his view that conditions based on the 1984 convictions were improper, Turner relies on *People v. Barro* (2001) 93 Cal.App.4th 62, which holds that a dismissal under Penal Code section 1385 "operates, as a matter of law, to erase the prior conviction as if the defendant had never suffered the conviction in the initial instance." (*Id.* at p. 66.) In *Barro*, the defendant's prior conviction for mayhem, which had been dismissed under Penal Code section 1385, could not qualify as a strike under the Three Strikes law. (*Id.* at p. 64.) Nothing in *Barro*, however, prevents the facts underlying the 1984 convictions from being used as the basis of conditions of parole. As noted in *People v. Superior Court (Flores)* (1989) 214 Cal.App.3d 127, a case on which the Court of Appeal relied in *Barro*, a dismissal under Penal Code section 1385 "is not an adjudication the charged crime was not committed. Rather, the dismissal operates to free the criminal

_____

entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading." (Stats. 1980, ch. 938, § 7, p. 2968.)

11

defendant from further prosecution and punishment for that crime. The defendant stands as if he had never been prosecuted for the charged offense." (*Flores*, *supra*, at p. 136.)

More generally, there is no requirement that conditions of parole be based on conduct that led to a criminal conviction. The law is to the contrary: a parole condition barring lawful activity that is not related to the parolee's commitment offense will be upheld if it is reasonably related to the deterrence of future criminality. (*In re Hudson* (2006) 143 Cal.App.4th 1, 9-10, citing *People v. Lent* (1975) 15 Cal.3d 481, 486, & *In re Stevens* (2004) 119 Cal.App.4th 1228, 1234.) Turner does not contend that the conditions of his parole are invalid under the *Lent* standard, nor could he in light of the facts underlying the 1984 convictions. Turner does not dispute that he admitted to those facts in a parole clinical evaluation conducted on March 1, 2010, where he described the events underlying the convictions, saying that he had long been "plagued with Exhibitionism" and that he saw two girls ages 12 and 14 who seemed attractive to him and exposed his penis to them, and stated that he had lost his California Medical License as a result of the 1984 convictions.

Accordingly, Turner does not persuade us that *Perez-Torres*, which limits the availability of immunity when parole agents learn they have acted on the basis of a mistake, has any application to his case. The plaintiff in *Perez-Torres* was not a parolee, but state parole agents arrested and jailed him based on their mistaken belief that he had violated his parole, and he remained in jail for almost a month. (*Perez-Torres*, *supra*, 42 Cal.4th at pp. 138, 139-140.) He eventually sued the agents for negligence, false imprisonment, and violation of the Bane Act. (*Id.* at p. 140.) Our Supreme Court held that Government Code section 845.8, subdivision (a) immunized the defendants for their actions in arresting and jailing him based on their

12

belief that he was a parole violator. (*Id.* at pp. 141-142.) But the immunity did not extend to Perez-Torres's "continued incarceration after defendants knew or should have known he was the wrong man." (*Id.* at p. 142.) Once that point was reached, the agents' conduct in keeping Perez-Torres in jail went beyond the implementation of a policy decision that would be subject to immunity under Government Code section 845.8, subdivision (a): the agents had a ministerial duty to release him, and their failure to do so was an action subject to legal redress. (*Id.* at p. 145.) Turner has not demonstrated that the defendants here had any duty to rescind or decline to enforce conditions of parole based on the facts underlying the 1984 convictions, even after they learned that the convictions had been dismissed under Penal Code section 1385.

In sum, Turner's claims for negligence, negligent hiring and supervision, intentional infliction of emotional distress, and violation of Civil Code section 43 are barred by Government Code section 845.8, and therefore we do not reach his alternative arguments regarding those claims, which assume that immunity does not apply.

C.    *Statutory Immunity and Turner's Bane Act Claims*

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 883.)

Turner argues that these immunities provided by Government Code sections 820.2, 821.6, and 845.8, subdivision (a), do not apply to his Bane Act causes of action, which rest on allegations that Sims threatened him that

13

"bad things" would happen to him unless he dismissed his lawsuits, and Smith or Sims or Bent had him falsely arrested in retaliation for exercising his rights by reporting Sims's threat and refusing to dismiss his lawsuits. And he points out that effective January 1, 2022, the Bane Act was amended to provide that immunity under Government Code section 821.6 does not apply to Bane Act claims. (Civ. Code, § 52.1, subd. (n); Stats. 2021, ch. 409 § 3.)

Defendants contend that the Bane Act causes of action, like the others, arise from defendants' imposition and enforcement of his parole conditions and are therefore barred by Government Code immunities.

Although the actions taken in connection with Turner's arrest in December 2011 could be characterized as determining whether to revoke his parole and would therefore be subject to immunity,[4] defendants do not explain how Sims's alleged threat arises from the imposition and enforcement of Turner's parole conditions or the revocation of his parole. [5]

D.    *Issue Preclusion and Turner's Bane Act Claims*

In the alternative, defendants argue that the Bane Act claims are barred by issue preclusion, based on findings made by the district court in Turner's federal court action against the defendants. We find the alternative argument persuasive with respect to Turner's cause of action based on the

---

[4] Defendants came forward with evidence that a parolee informed Smith of a threat made by Turner, and that the report led to Turner's December 2011 arrest. Turner denies that he threatened Smith or anyone else, but does not dispute that Smith received the report.

[5] Defendants cite *Perez-Torres*, *supra*, to support their contention that Government Code section 845.8, subdivision (a), applies to Bane Act causes of action, but the facts of that case are entirely unlike the facts here, and defendants offer no discussion or analysis to show how the case is relevant to Turner's cause of action based on Sims's alleged threat.

14

allegedly retaliatory December 2011 arrest, but not with respect to the cause of action based on the alleged threat from Sims.

The doctrine of issue preclusion or collateral estoppel bars the " 'relitigation of issues argued and decided in prior proceedings.' " (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511 (*Hernandez*).) In addition to requiring identity of issues between the two proceedings, issue preclusion requires that the issue was litigated and " 'necessarily decided' " in the prior proceeding; that there was a final decision on the merits in the prior action; and that the party against whom issue preclusion is asserted was a party to the prior proceeding. (*Ibid.*) "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.) The " 'necessarily decided' " requirement means that resolution of the issue must "not have been 'entirely unnecessary' to the judgment" in the prior proceeding. (*Ibid.*)

Turner argues that defendants have waived any arguments of issue preclusion. The arguments lack merit. First, Turner argues that defendants waived the arguments by stipulating that the dismissal of Turner's state claims in federal court was without prejudice and did not bar his litigation of the claims in state court. It is well-established that the fact that Turner's state law claims were preserved for state court litigation means that defendants cannot prevail on an argument that the claims are barred in state court by the doctrine of *claim* preclusion. (*United Bank Trust Co. of California v. Hunt* (1934) 1 Cal.2d 340, 345.) But Turner cites no authority to support his contention that defendants cannot prevail by virtue of the doctrine of *issue* preclusion, and there are cases to the contrary. (See, *e.g.*, *Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1232 (*Lumpkin*) ["[w]here

15

dispositive factual issues are actually litigated and resolved in [a] federal action, the losing party is estopped to relitigate those issues in a subsequent state action" that involves claims over which the federal court declined to exercise jurisdiction].)

Turner also argues that defendants waived their issue preclusion arguments by failing to raise them in their motion for summary judgment in the trial court.[6] It is true that as a general matter, points not raised in the trial court will not be considered on appeal. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11.) But we may consider a newly-raised issue if it involves a purely legal question that rests on an uncontroverted record that could not have been altered by the presentation of additional evidence, so long as the opposing party has notice and an opportunity to respond to that ground. (*Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335-336, citing cases and Code. Civ. Proc., § 437c, subd. (m)(2).) Turner has had both.

We move now to the merits, addressing first Turner's claim of retaliatory arrest. The factual allegations concerning the arrest are among the allegations on which Turner based his federal claims that defendants retaliated against him for exercising his First Amendment Rights. (See *Turner I*, *supra*, 2017 WL 897333 at *3 [describing Turner's allegations of retaliation].) It is apparent that in the federal case, as here, Turner alleged that he was arrested without probable cause in retaliation for reporting a

---

[6] Defendants raised the issue preclusion argument for the first time on appeal in their respondents' brief. In his reply brief, Turner's only response to that argument was that his Bane Act claims are not barred by the doctrine of claim preclusion. Pursuant to Code of Civil Procedure section 437c, subdivision (m)(2), we requested and received supplemental briefing from the parties on whether Turner's Bane Act causes of action are barred by the doctrine of issue preclusion.

16

threat made by a parole agent. (*Turner I, supra*, 2017 WL 897333 at \*3, \*4 & fn. 9.)

The federal district court granted defendants' motion for summary judgment on Turner's federal claims based in part on its finding that no reasonable juror could find from the undisputed facts that Turner was arrested in retaliation for his protected activity. (*Turner I, supra*, 2017 WL 897333 at \*6.) The Ninth Circuit Court of Appeals affirmed the grant of summary judgment.[7] (*Turner II, supra*, 734 Fed. App'x at pp. 461-462.)

To prevail on his Bane Act claim arising from the December 2011 arrest, Turner would have to prove that he was arrested in retaliation for his protected activity. (See CACI No. 3066 "Bane Act – Essential Factual Elements (Civ. Code, § 52.1)" [requiring proof that defendant acted "to retaliate against [plaintiff] for having exercised [his] right [*e.g. to vote*]"].) But this fact has already been decided against Turner, and the doctrine of

---

[7] The Ninth Circuit concluded that Turner "failed to 'put forward specific nonconclusory factual allegations' to establish that Appellee Smith harbored a retaliatory motive when initiating his . . . parole revocations" and that Turner had presented "no evidence" implicating the other defendants. (*Turner II, supra*, 734 Fed. App'x at pp. 461, 462.) As to Turner's December 2011 arrest, the court stated as follows: "As reported to Appellee Smith, Appellant stated, 'Melody Smith? By the time I get done with her, she won't be singing any more melodies.' This statement caused another parolee to call Smith and report it out of 'concern for [Smith's] welfare.' The parolee also reported that Appellant made 'several agitated and threatening statement regarding [Smith] and the Department of Parole Operations.' The counselor in charge of the session confirmed the parolee's report to Smith. Noting that Appellant's criminal history included a charge for possession of a loaded firearm in public, Smith recommended Appellant's parole revocation for making a criminal threat. Appellant now contends that he actually stated his 'lawsuits' would stop Smith from 'singing any more melodies,' and that this comment was made in jest. But Appellee Smith could have reasonably believed the reports of the parolee and the counselor." (*Id.* at p. 462.)

17

claim preclusion prevents him from relitigating it.  (See *Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 724 ["it is settled that even though the causes of action be different, the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination"]; *Hernandez*, *supra*, 49 Cal.4th at p. 505, 513-512 [federal judgment on civil rights claim under 42 U.S.C. § 1983 barred state law tort claim where underlying issue had been resolved in defendants' favor].)

We find *Lumpkin, supra,* 49 Cal.App.4th 1223 instructive.  The plaintiff in *Lumpkin* filed suit in federal court alleging a claim under the California Fair Employment and Housing Act (FEHA) that he had been terminated from his position because of his religious beliefs, as well as a claim under 42 United States Code section 1983 that he had been deprived of his right to exercise his constitutionally protected religious beliefs by defendants acting under color of state law.  (*Id.* at p. 1228.)  The federal court granted summary judgment on all Lumpkin's causes of action, except his FEHA claim, over which it declined to exercise supplemental jurisdiction, and the state FEHA claims were dismissed without prejudice to refiling in state court.  (*Ibid.*)  In granting summary judgment, the federal court found that Lumpkin had not presented evidence of a discriminatory motive sufficient to proceed to trial.  (*Id.* at p. 1231.)  Lumpkin then refiled his FEHA claim in state court, and the trial court sustained a demurrer without leave to amend on the basis of claim preclusion.  (*Id.* at p. 1229.)  The Court of Appeal affirmed, holding that even though there were "substantive differences" between Lumpkin's federal and state claims (*id.* at p. 1231), what mattered for the purposes of issue preclusion was whether an issue decided in the federal case was a "pivotal factual issue" to be decided in the state case.  (*Id.*

18

at p. 1232.)  To prevail in his state action, Lumpkin would have had to prove that his dismissal was motivated by discriminatory purposes, but that question of fact had already been resolved against him in federal court, and could not be relitigated in state court.  (*Id.* at p. 1233.)

We turn now to Turner's claim that Sims threatened him in violation of the Bane Act.  In the federal case, as here, Turner alleged in December 2011, Sims told him that "bad things" would happen to him if he did not drop pending lawsuits against the defendants.  (See *Turner I, supra*, 2017 WL 897333 at *3 [describing allegation that "Sims said in December 2011 that 'bad things' would happen if he did not drop pending lawsuits or refrain from filing new ones"].)

In granting summary judgment in the federal case, the district court rejected Turner's assertion that the alleged threat constituted "a stand-alone First Amendment claim that survives summary judgment."  (*Turner I, supra*, 2017 WL 897333 at *4, fn. 9.)  The court explained that although Turner did not have to "show that his 'speech was actually suppressed or inhibited,' " in the absence of showing an "actual chilling effect on his speech" (which was not the case) Turner would have to show that Sims intended to interfere with his First Amendment rights and that Turner suffered legal injury as a result of Sims's action.  (*Ibid.*)  And the court found that Turner failed to "offer enough admissible evidence for a reasonable jury to find that he suffered an injury as a result of" Sims's alleged threat.  (*Ibid.*)  The court observed that although Turner claimed to have been " 'really shook up and extremely nervous and upset' " after the interaction with Sims, Turner's hurt feelings did not constitute legal injury.  (*Ibid.*)  Further, the court found that "no reasonable jury . . . could conclude that Sims's alleged threat caused Turner's larger psychological problems."  (*Ibid.*)

19

These findings may bar Turner from claiming damages under the Bane Act from alleged injury arising from Sims's threat, but they do not bar Turner's Bane Act cause of action against Sims, because defendants have failed to show that the Bane Act requires that Turner prove that Sims's threat caused injury. The Bane Act authorizes Turner to pursue a civil action for damages, including damages under Civil Code section 52. (Civ. Code, § 52.1, subd. (c).) Civil Code section 52 provides for damages up to three times actual damages "but in no case less than four thousand dollars" for violation of several statutes, including Civil Code section 51, the Unruh Act. (Civ. Code, § 52, subd. (a).) Although Civil Code section 52 itself does not mention the Bane Act, we assume, without deciding, that the Bane Act's explicit reference to section 52 authorizes the award of damages under Civil Code section 52, subdivision (a). We note that under the Unruh Act, statutory damages are available without proof of harm and causation, and we assume, without deciding, that the same rule applies under the Bane Act. [8] (See *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 33 [Unruh Act "provides for damages aside from any actual damages incurred by the plaintiff"]; see also Directions for Use for CACI No. 3066 [discussing damages available under the Bane Act].)

To sum up then, to prove his threat cause of action under the Bane Act, Turner will have to prove that by threat, intimidation or coercion, Sims

---

[8] In his Fifth Amended Complaint, Turner alleges that Sims's conduct caused injuries to Turner in the form of "emotional and mental distress, trauma, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, anxiety, and a deprivation of his civil and statutory rights," and that accordingly Sims is liable to Turner for damages "in an amount subject to proof." But Turner's prayer for relief includes "statutory damages . . . under Civil Code § 52.1."

20

attempted to interfere with Turner's right to pursue his lawsuits. (Civ. Code, § 52.1, subds. (b) & (c).)

In seeking summary judgment in the trial court on Turner's Bane Act threat claim, defendants' argument rested on a sworn declaration in which Sims stated under penalty of perjury, "At no point did I ever tell Turner that if he did not stop protesting and litigating his parole conditions, 'bad things are going to happen to you.' Nor did I ever threaten Turner not to file lawsuits." In opposing summary judgment, Turner submitted a sworn declaration stating that on December 11, 2011, when he went to the parole office for a drug test, he was greeted by Sims "who was very upset and literally yelled at me to stop my lawsuits. He was ranting and raving and I was sure I was going to be immediately arrested. . . . At one point, [defendant] Sims said, 'Turner, you're suing everyone. You're suing motels. You're suing us. You got to stop this. And if you don't stop this, bad things are going to happen to you.' [¶] I took this as a serious threat of physical harm, perhaps even death." Thus, from the declarations of Sims and Turner, it appears that there is a triable dispute of fact with respect to the alleged threat, which precludes a grant of summary judgment.

On appeal, defendants argue that Turner's threat cause of action is barred by the federal court's finding that no reasonable jury could find from the undisputed facts that defendants violated Turner's constitutional rights. (*Turner I, supra*, 2017 WL 897333 at *6.) That finding, however, was limited to Turner's claim for retaliatory arrest, not to Turner's stand-alone threat claim. (*Ibid.*) Defendants have not shown that the federal district court made any findings as to whether or not Sims threatened Turner in an attempt to interfere with Turner's right to sue.

In sum, defendants fail to show that Turner's threat claim against Sims is barred by statutory immunity or by the doctrine of issue preclusion, and they fail to show that there is no triable issue as to any material fact concerning that cause of action. This precludes summary judgment, regardless of the merits of Turner's other causes of action. (Code Civ. Proc., § 437c, subd. (c); see also *Homestead Savings v. Superior Court* (1986) 179 Cal.App.3d 494, 498 [causes of action may not be summarily adjudicated in the absence of a motion for summary adjudication].) Accordingly, we reverse the judgment of the trial court.

## DISPOSITION

The judgment is reversed with directions to the trial court to vacate its ruling on summary judgment and enter a new order denying defendants' motion. The parties shall bear their own costs on appeal.

_____
Miller, J.

WE CONCUR:


_____
Stewart, P.J.


_____
Richman, J.


A164194, *Turner v. Smith*